EXHIBIT 1

<u>FINDINGS OF FACT AND DECISION</u>

Case No.                           243409

Student's Name:                    Z█ A█

Date of Birth:                     █████████

District:                          22


Hearing Requested by:              Sylvia Arje
                                   (Parent of the Student)


Private School:                    iBrain

Hearing Dates                      March 30, 2023
                                   April 17, 2023
                                   April 25, 2023

Record Close Date:                 May 30, 2023

Hearing Officer:                   Allana Alexander, Esq.

Findings of Fact and Decision
Case No. 243409

**NAMES AND TITLES OF PERSONS WHO APPEARED**

<u>For the Student:</u>
JOHN HENRY, Attorney
SYLVIA ARJE, Parent
ZACK ZYLSTRA, Law Clerk
TIFFANY SEMM, Director of Special Education, iBRAIN
RACHEL COHEN, CARE for Special Children, Advisor
SARA HOROWITZ, CARE, for Special Children, Director
EILEEN DOUGHERTY, Speech-Language Pathologist, Assistive Technology Provider, IBrain

<u>For the Department of Education:</u>
SIOBHAN O'BRIEN, Attorney
COURTNEY JOHNSON, CPSE Administrator
ANTOINETTE BROWN, Assistant Principal, Joan Snow Prep School

## INTRODUCTION

This matter comes before the undersigned Impartial Hearing Officer ("IHO") through the Parent's Due Process Complaint ("DPC") filed on or about December 6, 2022, regarding the 2022/23 school year. (Ex. A).  The DPC alleged that the District denied the Student a Free Appropriate Public Education ("FAPE") as required by the Individuals with Disabilities Education Act ("IDEA") by failing to recommend an appropriate program and placement. (Id.). The Parent has requested tuition reimbursement for their unilateral placement at the Private School.

I was appointed as impartial hearing officer ("IHO") on January 20, 2022.  A Pre-hearing conference was held on January 31, 2023, at which time the Parties expressed the desire to move forward to a hearing on the merits.

## BACKGROUND AND POSITIONS OF THE PARTIES

At the time of the filing of the DPC the Student was a 3-year-old child classified by the District as a student with a Learning Disability (P-Ex. A, D-Ex. 1). The Student is diagnosed with global development delays and a genetic disorder that affects his brain and central nervous system. The Student is non-verbal and non-ambulatory. (Exh. G pgs.1-2, Ex. 1).  The Student's classification and eligibility for special education supports and services are not in dispute. (Ex. 1).

An IEP meeting was held on March 22, 2022. IEP team members in addition to the Parent and the Parent's advocate were present. (Exh. 1 pg. 14). The IEP team recommended the following for the 12-month school year-

- Special class 8:1:2

-Speech-Language therapy 3x30 minutes per week (group of 2)

-Occupational Therapy 3 x30 minutes per week (individual)

-Physical Therapy 3x30 minutes per week (individual). (Exh. 1pg. 1).

-Special transportation to the school- via minibus.

(Exh. 1).

Findings of Fact and Decision                                                     4
Case No.  243409

On March 22, 2022, the District provided the above information to the Parent in a Notice of Recommendation letter. (Exh. 2). On June 24, 2022, the District sent the Parent a school placement letter in which it recommended Joan Snow Pre-School as a placement for the Student for the 2022/23 12-month school year. (Exh. 3). On August 25, 2022, the Parent filed 10-day notice informing the District of its intention to unilaterally place the Student.  The Parent subsequently filed a DPC that raised multiple challenges to the IEP. (Exh. A). The Parent' DPC alleges that the IEP was inappropriate because a neuropsychological evaluation was not performed, the IEP did not provide for a 1:1 paraprofessional in a small classroom setting, it did not provide Assistive Technology and music therapy.  The Parent further asserted that the thirty-minute therapeutic sessions were inappropriate and that the District failed to provide limited time travel that included a 1:1 transportation nurse/paraprofessional, air conditioning, a lift, bus oxygen and a regular-sized wheelchair.

The District asserted that it provided the Student FAPE and presented evidence which included the Student's IEP and the testimony of the CPSE Administrator who was present at the Student's IEP meeting in addition to the testimony of the Principal of the recommended placement.  (A complete list of evidence admitted at the hearing is appended to this Order).

To support her claim for tuition reimbursement the Parent submitted documentary evidence that included ten-day notice, an IEP created by the Private School, an enrollment contract and testimony from the Director of the Private School and the School's Assistive Technology Director. The Parent also testified in addition to two advocates that the Parent worked with while researching schools for the Student.

Both Parties submitted closing briefs in lieu of a closing statement.


**<u>FINDINGS OF FACT AND DECISION</u>**

The IDEA provides that children with disabilities are entitled to a Free Appropriate Public Education ("FAPE") (20 U.S.C. § 1400 [d][1][A]. A FAPE consists of specialized education and related services designed to meet a student's unique needs, provided in conformity with a comprehensive written Individualized Education Program ("IEP") (34 C.F.R. § 300.13).

An appropriate program begins with an IEP which accurately reflects the results of the 1) student's present levels of performance; 2) provides for the use of appropriate special education services to address the child's special education needs; 3) establishes annual goals which are related to the child's educational deficits; 4) identifies transitions services; 5) provides a start and end date to the recommended program and services; and 6) criteria and evaluation procedures for the measurement of goals. *See,* Walczak, *supra*; Id., Appeal No. 00-005 *See also* 8 NYCRR 200.4(d)(2)(i)-(vi). "The initial procedural inquiry is no mere formality." Walczak, at 129. "Adequate compliance with the procedures prescribed [by IDEA] would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP." Rowley at 206.

**Procedural Considerations**

        A review of the March 22, 2022, IEP demonstrates that in accordance with 8 NYCRR 200.4(d)(2)(i)-(vi) relevant factors were considered in the development of the IEP.  All required members were present, the CPSE administrator, special education and general education teachers and the Parent and her advocate. (Ex. 1) The Student received a disability classification, and his present levels of academic achievement and functional performance were considered. (Exh. 1, tr. 34-37).  The IEP team reviewed various therapeutic assessments in addition to a psychological assessment.  (Id., tr. 34).  The District created annual goals for the Student which included, the ability to sit up straight, improve his trunk support, reach for objects across the table independently, improve grasp and hand manipulation, achieve some lower extremity dissociation with minimal physical assistance to help the Student move his body more independently, visual motor integration, improve language and communication skills by pointing and using word approximations to express needs and vocalizations when his name is called.   (Exh. 1 pg. 6-9, tr. 37-39). The Student's goals are specific and measurable as each skill is identified and can be built upon by increasing the duration of the skill, and the skills allow for progression into a new skill. (tr. 41-42). The goals were designed to further develop the Student's communication and help him become more physically independent.

The District's IEP was procedurally sound. It contained a disability classification, program recommendations, current academic and functional and emotional functioning, goals, and measurements related to the Student's deficits.

## Substantive Considerations

A school district has offered a student a FAPE when (a) the board of education complies with the procedural requirements set forth in the IDEA; and (b) the IEP is developed through the IDEA's procedures and is reasonably calculated to enable the student to receive educational benefits *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206-07 (1982). To meet its substantive FAPE obligations, a district must offer a student an IEP that is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances" *Endrew F. v. Douglas County Sch. Dist. RE-1*, No 15-827, 2017 WL 1066206, 137 S.Ct. 988, 69 IDELR 174 (U.S. Mar 22, 2017). The District is not required to "maximize" the potential of students with disabilities (Appeal No. 21-019 at p. 6; Rowley, 458 U.S. at 189, 199; Walczak, 142 F.3d at 132).

Decisions of impartial hearing officers must be on substantive grounds based on a determination of whether a the student received a FAPE, 8 NYCRR § 200.5(j)(4)(i),  except as follows:

> In matters alleging a procedural violation, an impartial hearing officer may find that a student did not receive a free appropriate public education only if the procedural inadequacies impeded the student's right to a free appropriate public education, significantly impeded the parent's opportunity to participate in the decision-making process regarding the provision of a free appropriate public education to the parent's child, or caused a deprivation of educational benefits. Nothing in this paragraph shall be construed to preclude an impartial hearing officer from ordering a school district to comply with procedural requirements under this Part and Part 201 of this Title 8 NYCRR § 200.5(j)(4)(ii).

School districts have the burden of proof, including the burden of persuasion and burden of production, in IDEA due process hearings, except that a parent or person in parental relationship seeking tuition reimbursement for a unilateral parental placement has the burden of

persuasion and burden of production on the appropriateness of such placement (NYS Educ. Law § 4404(1)(c)).

A board of education may be required to pay for educational services obtained for a child by the child's parent, if the services offered by the board of education were inadequate or inappropriate, the services selected by the parent were appropriate, and equitable considerations support the parent's claim. (*School Committee of the Town of Burlington v. Department of Education, Massachusetts*, 471 U.S. 359 [1985]; *Florence County School District Four et al. v. Carter by Carter*, 510 U.S. 7 [1993]; see also *Frank G. and Dianne G. v. Bd. of Educ. of Hyde Park,* 459 F.3d 356 [2d Cir. 2006], cert denied, *Board of Educ. of Hyde Park Cent. School Dist. v. Frank G.,* 2007 WL 2982269 [Oct. 15, 2007].

The Parent's Due Process Complaint raised multiple challenges to the committee on special education ("CSE") which included its failure to provide a program that was responsive to the Student's global deficits. (Ex. A2-A3). The Supreme Court has found that "[a] reviewing court may fairly expect those authorities [school district staff] to be able to offer a cogent and responsive explanation for their decisions that shows the IEP is reasonably calculated to enable the child to make progress appropriate in light of his circumstances." *Endrew F. v. Douglas County School District*, 137 S. Ct. at 1002 (2017).

The District provided detailed testimony to explain why a 12 month 8:1:2 class was recommended for the Student.  The IEP notes that because of the Student's cognitive and developmental delays the Student requires the support of a special class 12-month program.  At the hearing the CPSE Administrator explained that a smaller class size with a composition of 6:1:2 was not offered to the Student because he had more cognitive development than a child that she would have recommended for said class. (tr. 52). The District was cross examined about the absence of a 1:1 classroom paraprofessional considering that the Student is non-verbal, lacks the ability to follow directions, has immaturities in reflex and gross and fine motor skills and is dependent on others for sitting, balance and transitions. (tr. 60). The CPSE administrator explained that the deficits were taken into consideration when the team recommended an 8:1:2 classroom. There are various materials in the classroom that the Student could use to be supported which include a boppy pillow and a table can support the Student's ability to sit up.

Findings of Fact and Decision                                                                 8
Case No.  243409

(tr. pg. 61).   The IEP created by the Private School demonstrates that the Student can be physically supported by materials. It reads, the Student "has limited mobility and is dependent upon an activity chair.  When at school he is most frequently seated in an activity chair with a tray adapted for his needs. For most activities the tray provides postural support as well as a surface where he can actively visually and physically engage with instructional material" (Exh. G. pg. 2).

The CPSE Administrator further explained that she didn't believe that a paraprofessional was needed because there would be three adults in the classroom who could support the Student's needs.  She believed that Joan Snow would address the Student's needs as she testified that "while most of our schools offer similar programs, some are better at supporting children with severe needs like this and the program that he was being recommended for would have everything that he needs…." (tr. 63). She provided additional explanation for the decision not to utilize a 1:1 paraprofessional-

> *"I wanted the Student to have an opportunity to be as independent as possible and to feel that he could empower himself and grow unless he needed the support.  So in order to determine a need, I would need to have evidence of a need.  Right now, based on the program that he was being recommended for, the School that he would be assigned to. And all the services and supports that he would be getting, I didn't have a need determined for a paraprofessional."* (tr. 64).

The Parent cross examined the witness on the above statement, questioning her understanding of the Student's cognitive abilities and whether the Student was capable of feeling like he is different in a classroom setting.  (tr. 65).  The Administrator responded.

> *"Absolutely. He is a human being. He is sitting in a classroom. He is able to observe what is happening around him.  He interacts with his mom.  He makes eye contact.  He is able to identify the—the –his mom and know that she has a relationship with him. (omitted)…He needs an opportunity to grow and to develop*

*with other peers so he can improve not only his self-skills but also his ability to develop with others." (tr. 65).*

When questioned about how the Student would communicate in the absence of individual support the administrator explained that the teachers are New York State Certified, have worked with non-verbal students and they have several materials and devices to support the children which include pictures, materials, manipulatives, pointing, and gestures including sign language. (tr. 68).

The District further explained the reason why the related services, Speech-Language therapy, occupational therapy, and physical therapy were going to be administered to the child three days a week in thirty-minute sessions.  In her professional experience she has observed children with severe disabilities and putting them in a therapy session beyond 30 minutes is overwhelming. (tr. 76).  The Students are unable to keep up and retain the information presented. (Id). 30-minute sessions are effective because they are a collaborative effort with the classroom teacher and the therapist who communicate regularly to know what skills are being developed and they are reinforced in the classroom. (tr. 78-79). Further, the IEP recommendation for thirty-minute therapy sessions also finds support in the Private School's IEP as it notes that Student "most often naps during the day-thus he requires breaks as needed and sensory input as needed to maintain functional arousal level for engagement throughout the day".  (Exh G. pg. 2). Accordingly, the testimony that sessions greater than 30 minutes would overwhelm the Student and impact retention is credible.  The District's therapeutic recommendations addresses the Student's unique needs.

While the Parent asserts that FAPE was denied in the absence of music therapy and assistive technology, the District demonstrated that the Student could make progress in its absence.  While a music therapy class may be beneficial to a Student with a brain injury, it does not invalidate the District's program. Assistive technology, while it may be beneficial in facilitating alternative forms of communication, and perhaps at an even faster pace than without, its absence is not a denial of FAPE.  The District testified to various means of communication that could be utilized by the Student in lieu of assistive technology, including sign language,

gesturing, pointing and simple vocalizations. Assistive technology was rejected by the District because it wanted to have the opportunity to first work with the Student to develop vocalizations as one of the Student's long-term goals was vocalizations of simple words like "water" and "cup". (tr. 71). The Parent's Assistive Technology Provider testified that progress could still be made in the absence of assistive technology (tr. 214-216).

With respect to transportation, the District authorized special transportation for the Student to and from School in a minibus but did not indicate that it would include a lift. (Exh. 1 pg. 13).  The District was aware that the Student is non-verbal and non-ambulatory, accordingly, a lift bus should have been recommended with at least one paraprofessional present on the bus, to address the Student's needs. However, the District testified that it could make an adjustment to transportation if necessary (tr. 80-81). With respect to the Parent's demand for a bus with oxygen, in the absence of medical evidence demonstrating the need, this IHO lacks the evidence to conclude that oxygen on the bus was necessary. Despite the deficiencies with the District's transportation recommendations this alone does not demonstrate a denial of FAPE.

The District provided a cogent and detailed explanation that provided insight into the thoughts and reasoning behind its IEP recommendations, as well its expectations for what the Student could accomplish in the recommended placement and the reasons why it felt that its recommendations were appropriate, realistic, and ambitious to allow the Student to make meaningful progress.  Moreover, the CPSE Administrator's testimony was corroborated by the District's IEP and her testimony was consistent throughout her direct and cross examinations.

Joan Snow previously serviced Students with similar needs, in the 8:1:2 classroom.  The School was able to offer the Student all related services, had an available seat for him and the District sent a school placement letter to the Parent to notify the Parent of the placement.  (tr. 108-109, Exh. 3).

The District provided the Student a Free and Appropriate during the 2022/23 school year. Having met its burden, examination into the appropriateness of the unilateral placement and the equities is not relevant.

Findings of Fact and Decision                                                    11
Case No.  243409

**Independent Education Evaluation**

As per New York State Commissioner's Regulations section 200.5(g)(1), if the parent disagrees with an evaluation obtained by the District, the parent has the right to obtain an independent educational evaluation at public expense. If a parent requests an independent educational evaluation at public expense, the school district must, without unnecessary delay, either ensure an independent educational evaluation is provided at public expense or file a due process complaint notice to request a hearing to show that its evaluation is appropriate or that the evaluation obtained by the parent does not meet the school district criteria. *See*, 34 CFR 300.502[b][2][i]-[ii]; 8 NYCRR 200.5[g][1][iv].

The Parent disagrees with the District's recommendations in the IEP. The IEP was based largely upon a psychological assessment, OT, SLT and PT assessments, the Parent believes that these evaluations failed to adequately assess the Student's needs. Accordingly, I will draft an interim order for an independent evaluation requested by the Parent.

**<u>ORDER</u>**

The District Provided the Student FAPE during the 2022/2023 school year. The IEP dated March 22, 2022, was appropriate. Joan Snow Preparatory School is an Appropriate Placement, and it could implement the Student's IEP during the 2022/23 school year. The Parent's request for direct funding of the unilateral placement is denied.

**IT IS HEREBY ORDERED** that the Parent's request for the direct and prospective tuition funding is denied.

Findings of Fact and Decision                                                                    12
Case No.  243421

**FURTHER ORDERED** that the District shall fund an independent Neuropsychological evaluation for the Student, to be conducted by a New York state licensed psychologist of the Parent's choosing at a reasonable market rate.

**FURTHER ORDERED** that the District's Committee on Special Education shall reconvene within 30 school days of receipt of the ordered evaluation, or sooner upon agreement of the parties.

**SO ORDERED.**

Dated: Jun 19, 2023

*Allana Alexander*
Allana Alexander, Impartial Hearing Officer

Findings of Fact and Decision                                                        13
Case No.  243409

---

### *NOTICE OF RIGHT TO APPEAL*

*Within 40 days of the date of this decision, the parent and/or the Public School District has a right to appeal the decision to a State Review Officer (SRO) of the New York State Education Department under Section 4404 of the Education Law and the Individuals with Disabilities Education Act.*

*If either party plans to appeal the decision, a notice of intention to seek review shall be personally served upon the opposing party no later than 25 days after the date of the decision sought to be reviewed.*

*An appealing party's request for review shall be personally served upon the opposing party within 40 days from the date of the decision sought to be reviewed. An appealing party shall file the notice of intention to seek review, notice of request for review, request for review, and proof of service with the Office of State Review of the State Education Department within two days after service of the request for review is complete. The rules of procedure for appeals before an SRO are found in Part 279 of the Regulations of the Commissioner of Education. A copy of the rules in Part 279 and model forms are available at http://www.sro.nysed.gov.*

Findings of Fact and Decision                                                14
Case No.  243409

## **DOCUMENTS ENTERED INTO THE RECORD**

### **Parent's Exhibits**

| Exhibit | Date | Description | Pages |
|---------|------|-------------|-------|
| A | 12/6/22 | Due Process Complaint –IH # 243409 | 6 |
| B | 3/22/22 | NYC DOE IEP | 20 |
| C | 8/10/22 | iBRAIN Enrollment Contract | 7 |
| D | 8/25/22 | Ten Day Notice | 2 |
| E | 9/16/22 | Determination Letter | 1 |
| F | 9/21//22 | Transportation Agreement | 5 |
| G | 2/28/223 | iBRAIN IEP | 41 |
| H | 4/23 | Affidavit of Tiffany Semm | 4 |
| I | 4/23 | Affidavit of Eileen Dougherty | 2 |
| J | 4/23 | Affidavit of Sylvia Arje | 2 |
| K | 2022 | CARE for Special Children Note | 4 |
| L | 4/19/23 | Affidavit of Sara Horowitz | 1 |
| M | 4/19/23 | Affidavit of Rachel Cohen | 2 |

### **District's Exhibits**

| | | | |
|---|---|---|---|
| 1 | 3/22/22 | CPSE IEP | 14 |
| 2 | 3/22/22 | Notice of Recommendation | 1 |
| 3 | 06/24/22 | A1P – Initial Authorization to Attend | 1 |

### **Iho Exhibits**

| | | | |
|---|---|---|---|
| I | 05/22/23 | District's closing Brief | 16 |
| II | 05/30/23 | Parent's Closing Brief | 20 |

**L.V. v. NYC Department of Education, 03 Civ. 9917 (SDNY)**

Parents of children with Individualized Education Programs who received or who may receive an order at the conclusion of an impartial hearing should read the attached notice about possible disclosure of information and documents about their children as part of a federal court litigation.

Translations in Spanish, Arabic, Bengali, Chinese, French, Haitian Creole, Korean, Russian, and Urdu are available on the DOE webpage at https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings

**Notice of Potential Disclosure of Student Education Records**

**Please read this notice carefully**. This is a message about possible disclosure of documents or data that might contain information about your child, if your child has been classified as a student with a disability and has been or may be the subject of a final Impartial Hearing Order.

**I.      Nature of the Lawsuit**

This lawsuit challenged the failure of the Department of Education ("DOE") of the City of New York to timely implement orders issued by impartial hearing officers in connection with impartial hearings held pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.* and N.Y. Education Law § 4401, *et seq.* In 2007, the parties entered into a Stipulation of Settlement (the "Stipulation") in which the DOE agreed to timely implement these orders.

In January 2021, the Court granted plaintiffs' motion for the appointment of a special master. On April 14, 2021, the Court entered an Order appointing David Irwin of Thru-Ed as the Special Master.  On May 14, 2021, the Court entered an Order detailing the duties and authority of the Special Master which include, among other things, the authority to review DOE's processes for implementing impartial hearing orders and to recommend to the Court improvements to enable DOE to timely implement orders a. Pursuant to this Order, the Special Master may have access to education records of students, upon DOE's compliance with the Family Education Rights and Privacy Act (20 U.S.C. § 1232g; 34 C.F.R. Part 99) ("FERPA").

## II.    Data Ordered to Be Disclosed

In order for the Special Master to perform his duties, the Court has directed the DOE to provide the Special Master (and employees and consultants at Thru-Ed) with access to records containing confidential student record information, including, but not limited to, documents submitted in the impartial hearing process, impartial hearing orders, data about compliance, and students' special education documents, such as individualized education programs, evaluations, authorizations, invoices, etc. The Special Master is required to keep any student documents and information confidential. No student-specific information will be shared with plaintiffs' counsel unless the student's parent specifically consents. If there is any student-specific information in the Special Master's reports to the Court, that information would not be made public.

The Special Master will use this information only for his work to review DOE's processes for implementing impartial hearing orders and to recommend to the Court improvements to enable DOE to timely implement orders.  The disclosure of this information does not affect any of your rights as a parent to seek special education services for your child.

## IV.    Objections to Disclosure

If you agree to the disclosure of this information to the Special Master, you do not need to do anything more.

If you do not want your child's information shared with the Special Master, you must object to this disclosure by submitting an objection to DOE's attorney, addressed to:

> Jeffrey S. Dantowitz
> NYC Law Department
> 100 Church Street, Room 2-121
> New York  NY  10007

or via email at LVObjection@law.nyc.gov.  Please reference the *LV v. DOE* lawsuit (Case No. 03-9917) when writing.  An Objection Form accompanies this Notice, though no written objection will be rejected if it is not submitted on this form.  If you object, no records containing you and your child's personally identifiable information or other FERPA-protected information will be provided to the Special Master, although nominal and incidental disclosure of your child's name may occur.  **Any objections must be received by December 3, 2021 or for impartial hearing orders issued after November 12, 2021, within 3 weeks of the issuance of the impartial hearing order**.

**If you would like more information about this notice, please contact the attorneys for plaintiffs**, **Rebecca Shore, of Advocates for Children of New York, Inc. at 646-532-6078.**

**OBJECTION TO DISCLOSURE OF RECORDS**
**LV v. DOE, 03 Civ. 9917 (SDNY)**

If you agree to the release of information about your child to the Special Master appointed in *L.V. v. DOE*, you do not need to complete this form.

If you object to the release of information about your child to the Special Master appointed in *L.V. v. DOE*, please compete and return this form to:

> Jeffrey S. Dantowitz
> NYC Law Department
> 100 Church Street, Room 2-121
> New York, NY  10007

or via email at LVObjection@law.nyc.gov

Child's name: _____

Name: _____

Address: _____

Impartial Hearing Order Case # (if known): _____

Date of Order (if known): _____

> If you object to the release of your confidential information, please check the line below:
>
> _____   I do not agree to have my confidential records disclosed to the Special Master in *L.V. v. DOE*.

_____          _____
Date                                         Please sign here

If you object to the release of information, your objection must be received by December 3, 2021 or, for impartial hearing orders issued after November 12, 2021, within 3 weeks of the issuance of the impartial hearing order.

\*   \*   \*   If you do not notify the DOE of your objections to the documents being released, you child's information will be provided to the Special Master appointed in *LV v. DOE*, 99 Civ. 9917 (SDNY) and/or consultants and employees of Thru-Ed.   The information will remain confidential and the disclosure of this information will not affect any of your rights to seek special education services for your child.

| |
|---|
| للاطلاع على هذا المستند باللغة العربية، قُم بزيارة الموقع الإلكتروني https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| YgÄs Äà Ät  Äà à ná^l á, https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings ná^f̂ |
| 若要以中文查看，請上網到 https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| Pour consulter ce texte en français, allez sur https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| Pou wè tèks sa a an kreyòl ayisyen, ale sou https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| 본 문서를 한국어로 보시려면 다음 웹사이트를 이용하십시오: https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| Для просмотра документа на русском языке посетите https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| Para ver este contenido en español, visite https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| اس کو اردو میں دیکھنے کے لیے https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings پر جائں |