EXHIBIT 6

## **FINDINGS OF FACT & DECISION**

Case No.:                              250961

Student's Name:                  D███  D  L  C█
                                           (referred to as "Student")

Date of Birth:                      ███████

District:                              2 – NYC DOE

Hearing Request by:           Massiel De La Cruz
                                           (referred to as "Parent")

School:                               iBRAIN
                                           (referred to as "Private School")

Date of Complaint:            July 5, 2023

Hearing Dates:                   November 8, 2023
                                           December 8, 2023
                                           January 3, 2024
                                           January 26, 2024

Actual Record Close Date:  February 23, 2024

Decision Date:                    March 3, 2024

Hearing Officer:                 Vanessa M. Gronbach, Esq.

Hearing Officer's Findings of Fact and Decision
Case No. 250961

**NAMES AND TITLES OF PERSONS WHO APPEARED ON NOVEMBER 8, 2023**

For the Student:
Anna Hallam, Esq., Parent Attorney
Joanna Laboue, Law Clerk

For the Department of Education:
Kashif Forbes, Esq., District Representative
Michelle LeFaivre, Assistant Principal
Dorothy Pfeiffer, School Psychologist

**NAMES AND TITLES OF PERSONS WHO APPEARED ON DECEMBER 8, 2023**

For the Student:
Anna Hallam, Esq., Parent Attorney
Massiel De La Cruz, Parent
Caleb Asomugha, Deputy Director of Special Education
Dona De Fina, Interpreter

For the Department of Education:
Kashif Forbes, Esq., District Representative
Lynn Harris, Nursing Supervisor

**NAMES AND TITLES OF PERSONS WHO APPEARED ON JANUARY 3, 2024**

For the Student:
Anna Hallam, Esq., Parent Attorney
Caleb Asomugha, Deputy Director of Special Education

For the Department of Education:
Kashif Forbes, Esq., District Representative

**NAMES AND TITLES OF PERSONS WHO APPEARED ON JANUARY 26, 2024**

For the Student:
Anna Hallam, Esq., Parent Attorney
Massiel De La Cruz, Parent
Katherine Flores, Interpreter

For the Department of Education:
Kashif Forbes, Esq., District Representative

Hearing Officer's Findings of Fact and Decision
Case No. 250691

## ISSUES

This matter comes before the undersigned Impartial Hearing Officer ("IHO") through the Parents' Due Process Complaint ("DPC") filed on or about July 5, 2023, and amended on or about September 26, 2023, regarding the 2023/24 school year (P-Ex. A)[1]. The DPC alleged that the District denied the Student a Free Appropriate Public Education ("FAPE") as required by the Individuals with Disabilities Education Act ("IDEA") by failing to provide the Student with appropriate special education services and an appropriate program and placement for the 2023/24 school year (P-Ex. A). The Parent requested tuition reimbursement and/or direct funding for the Private School for the 12-month school year; as well as the costs of related services, 1:1 private nursing, and a 1:1 paraprofessional; specialized transportation; an independent neuropsychological evaluation; updated evaluations for physical therapy, occupational therapy, and speech therapy; and a CSE reconvene to review all updated evaluations (P-Ex. A).

## PROCEDURAL HISTORY

The undersigned was appointed as hearing officer in this matter on July 11, 2023. A prehearing conference was held on August 21, 2023, to discuss the issues in the case. A hearing on the merits began on November 8, 2023, and concluded in four days, on January 26, 2024 (See, Transcripts).[2] The District presented documents for evidence and three witnesses. The Parent presented documents[3] and two witnesses by affidavit.

The record closed on February 23, 2024, upon submission of briefs. There were four extensions of the compliance timelines for investigation and to accommodate witnesses.

---

[1] Exhibits shall be referred to as follows: "P" for Parent Exhibit; "D" for the District's or Department's Exhibits.
[2] Reference to the Transcript shall be referred to as "T".
[3] A more detailed list of exhibits is attached.

## FINDINGS OF FACT

The Student is a 20 year old student currently attending the Private School during the 2023/24 school year (P-Ex. A). The Student suffers from a traumatic brain injury resulting in severe cognitive and global developmental delays and impairments in language, motor abilities, information processing, and speech (P-Ex. A; M). The Student has a history of viral encephalitis and is diagnosed with Lennox-Gastaut syndrome which causes seizures (P-Ex. M-1). Due to the sever nature of her brain injury, the Student is non-verbal and non-ambulatory and has highly intensive management needs (P-Ex. M-1). The Student is dependent on a caregiver 24 hours a day for all personal care and activities of daily living (P-Ex. M-1). She also requires a 1:1 paraprofessional to support her needs in her therapies and classroom activities (P-Ex. M-2).

The District convened an IEP meeting on November 16, 2022, to develop an IEP for the Student (P-Ex. A; B; M-2). The IEP had a program start date of November 28, 2022, and a projected reconvene date of November 16, 2023 (P-Ex. A; B; M-2). The Parent testified by affidavit that she attended the meeting, as did the Student's teacher and service providers from the Private School (a total of 8 Private School staff) (P-Ex. B56-57; M-2). The District attendees included the School Psychologist and a Special Education Teacher (D-Ex. 2; 15; T. 107). The School Psychologist testified that she had never met the Student (P-Ex. 107-108). The materials reviewed at the meeting were previous psychoeducational, social history, physical therapy, speech, occupational therapy evaluations, a draft IEP from the Private School, updated progress reports and medication administration forms (T. 108-110). The School Psychologist admitted that the evaluations were outdated (T. 110). The updated educational information in the November 2022 IEP all came from the Private School staff, reports, and assessments (P-Ex. B).

The District recommended 12:1:4 classroom program, with a 1:1 health paraprofessional; adapted physical education, and related services of OT, PT, speech, assistive technology, parent

counseling and training and school nurse services as needed (P-Ex. B46-47). The District did not recommend a 1:1 nurse (P-Ex. B46-47; M-2). The Parent disagreed with the District's recommendations of a 12:1:4 classroom, and failure to recommend a 1:1 nurse, music therapy and specific transportation accommodations (P-Ex. M-2). The SP testified that music therapy is not part of the District's continuum of services and she had never recommended it before (T. 123). The Parent testified that the Student also needs assistance with other things such as feeding and changing her diaper; and there needs to be at least two people to help her get around and satisfy her needs (T. 299, 303).

The Parent testified that the Student required a nurse because her seizures are unpredictable and uncontrollable, and her overall health is complicated (T. 295-296). The Parent also testified that the Student developed type 2 diabetes and the nurse administers her medicine to help control it (T. 299). The School Psychologist acknowledged that the Student required continuous monitoring of vital signs, however she testified that there were no instructions in the medical forms, nor were there instructions for VNS (D-Ex. 15-4; T. 120). The School Psychologist testified that the determination not to recommend a 1:1 nurse was made in consultation with the nursing unit, who have more medical expertise (D-Ex. 15-4; T. 119). They do this by submitting the Student's medical forms to the nursing unit (T. 125-126). The School Psychologist testified that the nursing staff are not typically invited to CSE meetings and were not in attendance at the Student's IEP meeting (D-Ex. 2; T. 125-126).

The Nursing Supervisor testified that she reviewed the Student's chart (T. 141). She was not present at the November 2022 IEP meeting, as she was not invited (T. 151-152). She reviewed the Student's medical forms requesting 1:1 nursing, medication administration, and medical accommodation for transportation (D-Ex. 7; T. 142-145). She recommended non 1:1 nursing service, meaning the school nurse/s in the building would provide the service to the

Student (D-Ex. 6; T. 146-147, 163). She testified that based on the medical documentation, that the Student receives a specific medication, in the rectum, for seizures that last more than five minutes, and that a nurse in the building could get to the Student in that five-minute period (T. 147, 148). There were no further instructions, despite being alerted to the fact that the Student has a vagal nerve stimulator ("VNS") implant (T. 147-148). She also testified that the Parent had not signed the medical forms, including the HIPAA form (T. 149-150). She stated that it is the responsibility of the CSE to reach out to the Parent to get the missing signatures, not hers (T. 172-173).

The Parent received a school location letter dated December 21, 2022, for a public school (P-Ex. H-8). The Parent then received a school location letter dated June 17, 2023, for the 2023/24 school year (D-Ex. 5). The Parent was emailed a copy of the IEP translated into her native language on June 29, 2023 (D-Ex. 15-6). The Assistant Principal ("AP") of the recommended public school testified by affidavit that the recommended public school has licensed OT, PT and Speech therapist on staff who provide the majority of services as a push-in basis, but if pull-out were necessary, there is space for those services (D-Ex. 16-1). Because services were provided as a push-in service, she did not believe that the Student would have required an extended school day (D-Ex. 16-1). The AP testified that the recommended school could implement the November 2022 IEP (D-Ex. 16-1). There are approximately 230 students enrolled at the public school for the 2023/24 school year (T. 86). There were three nurses at the location (T. 86). The School day runs from 8:00 a.m. to 2:50 p.m. (T. 88). There was one 12:1:3 class this school year, however the AP was unfamiliar with the class profiles of the students in that classroom (T. 91-94).

The Parent decided to re-enroll the Student at the Private School for the 2023/24 school year, where she has attended since the 2021/22 school year (P-Ex. E; M-2). The Parent also

signed contracts for transportation and nursing services (P-Ex. F; G). She signed the contracts

because it was what the Student needed (T. 313). The Parent sent the District a ten-day notice on

June 20, 2023, informing them of the unilateral placement for the 12-month 2023/24 school year

(P-Ex. D; M-3). The Parent testified that the District has not held another CSE meeting for the

Student since November 2022 (T. 294).

## CONCLUSIONS OF LAW

The Individuals with Disability Education Act ("IDEA") is comprehensive statutory

framework established by Congress to ensure that students with disabilities are afforded FAPE.

*See*, 20 U.S.C. §1400(d)(1)(A); Schaffer v. Weast, 546 US 49 (2005). A "free appropriate public

education consists of educational instruction that is designed to meet the unique needs of the

handicapped child, supported by such services as are necessary to permit the child to benefit

from the instruction." Bd. of Ed. Hendrick Hudson CSD v. Rowley, 458 U.S. 176, 188 (1982). In

order to demonstrate that FAPE is being provided, the school district must show "that it

complied with the procedural requirements set forth in the IDEA, and that the IEP developed by

its CSE through the IDEA's procedures is reasonably calculated to enable the student to receive

educational benefits." *See,* Application of Child with a Disability, Appeal No. 05-061, *quoting*,

Rowley at 206. The student's recommended program must also be provided in the least

restrictive environment with non-disabled peers.  *See,* Walczak v. Florida Union Free Sch. Dt.,

142 F.3rd 119 (2nd Cir. 1998).

Two purposes of the IDEA (20 U.S.C. §§ 1400-1482) are (1) to ensure that students with

disabilities have available to them a FAPE that emphasizes special education and related services

designed to meet their unique needs and prepare them for further education, employment, and

independent living; and (2) to ensure that the rights of students with disabilities and parents of

such students are protected (20 U.S.C. § 1400[d][1][A]-[B]; see generally, Forest Grove v. T.A.,

7

129 S. Ct. 2484, 2491 [2009]; Rowley, at 206-07).

An appropriate program begins with an IEP which accurately reflects the results of the 1) student's present levels of performance; 2) provides for the use of appropriate special education services to address the child's special education needs; 3) establishes annual goals which are related to the child's educational deficits; 4) identifies transitions services; 5) provides a start and end date to the recommended program and services; and 6) criteria and evaluation procedures for the measurement of goals. *See,* Walzczak, *supra*; Id., Appeal No. 00-005. "The initial procedural inquiry is no mere formality." Walczak, at 129. "Adequate compliance with the procedures prescribed [by IDEA] would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP." Rowley at 206. For an IEP to be reasonably calculated to enable the child to receive educational benefits, it must be likely to produce progress, not regression. This progress, must be meaningful; i.e., more than mere trivial advancement. Walczak, *supra*.

In Endrew F. v. Douglas County School District, 580 U.S. __, 14 (2017), the Court held that, "[t]o meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances, as a focus on the particular child is at the core of the IDEA. The instruction offered must be "specially designed" to meet a child's "unique needs" through an "individualized education program." §§1401(29), (14) (emphasis added), to reflect the fact that a contemplated IEP must be focused on the "particular child that is at the core of the IDEA."  In such case, the school is still required to ensure the student is given an IEP that requires not just academic but also functional progress and, although the goals may differ for students, each child must have an IEP that includes goals and services to enable a child to make both academic and functional progress. The court further stated that an IEP "is not a form document. It is constructed only after careful

consideration of the child's present levels of achievement, disability, and potential for growth"
§§1414(d)(1)(A)(i)(I)–(IV), (d)(3)(A)(i)–(iv), and that "a student offered an educational program
providing "merely more than de minimis progress" from year to year can hardly be said to have
been offered an education at all."

   The Court in Endrew further stated that, "[t]he IDEA demands more. It requires an
educational program reasonably calculated to enable a child to make progress appropriate in light
of the child's circumstances." Although the Supreme Court declined to elaborate on the
definition of "appropriate progress" from case to case, it stated that, "the adequacy of a given
IEP turns on the unique circumstances of the child for whom it was created." Finally, The
Supreme Court in Endrew declined to hold, as it declined to hold in Rowley, that "every
handicapped child who is advancing from grade to grade . . . is automatically receiving a
[FAPE]." Board of Ed. of Hendrick Hudson Central School Dist., Westchester Cty v. Rowley,
458 U. S. 176, 203, n. 25 (1982). A Student's "IEP need not aim for grade-level advancement.
But his educational program must be appropriately ambitious in light of his circumstances, just
as advancement from grade to grade is appropriately ambitious for most children in the regular
classroom. The goals may differ, but every child should have the chance to meet challenging
objectives." Endrew F. v. Douglas 580 U.S. ___ (2017). "It cannot be the case that the Act
typically aims for grade-level advancement for children with disabilities who can be educated in
the regular classroom, but is satisfied with barely more than de minimis progress for those who
cannot." Id.

   As set forth in Florence County Sch. Dist. Four v. Carter, 510 U.S. 7 (1993); Sch. Comm.
Of Burlington v. Dep't of Educ., 471 U.S. 359 (1985) it is well established that a District may be
required to reimburse parents for tuition payment to a private school if the services offered by the
District were inadequate or inappropriate, the services selected by the parents were appropriate

under the IDEA, and equitable considerations support the parent's claim for reimbursement. Thus, consideration of such a claim has been expressed by a three prong test: (1) was student denied FAPE; (2) the appropriateness of the Parent's unilateral placement; and (3) a balancing of the equities.

The burden of persuasion and proof is by the preponderance of the evidence standard, which requires a finding that the existence of a fact is more probable than not. When the evidence is evenly balanced, the party with the burden loses. The burden of production and persuasion is on the District for the first and third prongs. The Parent bears the burden of production and persuasion on the second prong. While some SRO decisions have found the District satisfied its burden of production and persuasion by relying on documentary evidence alone (*see* SRO 23-090; SRO 23-005; SRO 19-054; and SRO 23-054), generally, the nature of the District's burden and Parent challenges requires the District to defend the proposed program with testimony from a person with knowledge of the program, how it was developed, and why it was appropriate.[4]

As set forth above, for an IEP to be reasonably calculated to enable the child to receive educational benefits, it must be likely to produce "meaningful progress" appropriate in light of the child's circumstances. An IEP or Prior Written Notice that identifies a program, does not generally satisfy this burden to show the Student would make meaningful progress in the absence of testimony. Generally, Due Process requires each party to satisfy their respective burdens based on evidence and specific arguments at the hearing. An IHOs duty is to review the evidence presented, but when that evidence raises unanswered questions due to a failure to present

---

[4] For instance, *see* Z.A.R. v. City of New York, 2021 WL 9553001, 14-16 (E.D.N.Y., Feb.26, 2021) (District testimony was required to demonstrate IEP meeting notice to parent).

witnesses, I do not see how a party's burden can be met. Documents alone do not generally satisfy the burden of persuasion by a preponderance of the evidence. It is only by describing the documents and their relation to a student that a fact finder can evaluate the District's burden of persuasion.

Here, the District did present evidence to defend FAPE, however it fell short. The IEP attendance sheet indicates that the members of the CSE were comprised of the Parent, staff from the Private School (a total on 9) and two people from the District (the SP and a special education teacher) (P-Ex. B56-57). Although the District accepted all of the information presented by the Private School staff, and included all of that information in the IEP, the District made a unilateral decision to recommend a larger classroom size, without explanation as to how that would meet the Student's needs, in the same manner or even similar manner as her current 6:1:1 classroom. The School Psychologist testified that it was a recommendation made by the CSE team, however out of the eleven members, only two recommended the 12:1:4, the other nine members disagreed (T. 113). The School Psychologist then clarified that recommendations are ultimately made by the District team members (T. 126). This was not a consensus as to what would educationally benefit the Student. If the decision was meant to educationally benefit the Student, there was insufficient testimony to explain exactly why the recommendation of a 12:1:4 was made instead of what the Student had been receiving, a 6:1:1 program; how that new program would address the Student's many deficits, or whether the Student would be appropriately grouped with other students with similar needs.

Moreover, according to the Prior Written Notice dated June 17, 2023, the evaluations relied on by the District were from 2017 (psychoeducational), 2018 (social history) and 2019 (PT, Speech, OT) (P-Ex. H). The District's own witness testified by affidavit that the meeting was supposed to be a mandated three-year reevaluation and that the evaluations were outdated

(D-Ex. 15-2). The School Psychologist testified that she reviewed the older evaluations and determined that no additional assessments were needed and the reports provided by the Private School were sufficient (D-Ex. 15-2). Additionally, a classroom observation was not conducted (T. 115). This is all contrary to the New York State Regulations 200.4 (b)(4), which states that "a CSE shall arrange for an appropriate reevaluation…at least once every three years, except where the school district and parent agree in writing that such reevaluation is unnecessary." That did not happen here. Instead, the SP testified that she made the unilateral determination not to have the Student reevaluated (D-Ex. 15-2). Without updated evaluations, how could the District make an informed decision that a change in the Student's program was appropriately made.

As for the date of the PWN/School location letter dated June 17, 2023, this is late according the District's own Special Education Standard Operating Procedurals Manual which requires notice by June 15th. Moreover, the District witness testified that the proposed school closed on or about June 23 or 27 (T. 98). This does not give the any parent enough time to visit or gather information to make an informed decision. Especially a decision that would mean changing the placement of a fragile student. Case law is clear that these delays impede a parent's right to evaluate the placement and significantly impedes their opportunity to participate in the decision-making process. *See*, M.O. v. New York City Dept. of Educ., 793 F.3d 236 (2d Cir 2015); F.B. v. New York City Dept. of Educ., 132 F. Supp. 3d 522 (S.D.N.Y. 2015); C.U. v. New York City Dept. of Educ., 23 F.Supp.3d, 210 (S.D.N.Y. 2014).

Additionally, the CSE was not appropriately comprised as it lacked an important member, a medical professional. Especially, for this Student who has multiple medical issues. Here, the District's Nurse was not invited to the IEP meeting, even though she stated that has participated in IEP meetings (T. 151-152). It would have been beneficial to have the nurse present at the IEP meeting and have her hear from those who work with him on a daily basis. She

then made a unilateral decision to deny the 1:1 nursing services without all of the student's information (T. 163). She testified that the information she had was incomplete, as did the SP (D-Ex. 15-4; T. 120; 142-150). She could not answer if it would have been beneficial for the Student to have a 1:1 nurse throughout the day because she lacked additional information, she only had the information provided by the doctor (T. 163). There was no testimony that the District reached out to the Parent or asked for additional information regarding the Student's medical needs.

Regarding the lack of music therapy, it is unclear from the record whether music therapy was removed as a service by the District because other therapies could address the same deficits in the same manner, or because it is simply not a therapy the District ever recommends. The SP testified the that she does not and has not ever recommended music therapy (T. 123). There was no other related service provider presented at the hearing to confirm whether they could address the what the music therapist was addressing, or how that would be done. There was simply not enough information to make that determination.

Finally, the District has not convened a new meeting to develop an IEP for the remainder of the 2023/24 school year. The November 2022 IEP had a reconvene date of November 16, 2023 (P-Ex. B). According to the Parent, that had not occurred as of the date of her testimony, January 26, 2024 (T. 294). For all of the above reasons, I find that the District did not provide the Student with a FAPE during the 2023/24 school year.

**PARENT'S BURDEN**

Parents seeking reimbursement "bear the burden of demonstrating that their private placement was appropriate, even if the IEP was inappropriate" Gagliardo, at 112; see M.S. v. Bd. Of Educ., 231 F.3d 96, 104 [2d Cir. 2000]). "Subject to certain limited exceptions, 'the same considerations and criteria that apply in determining whether the school district's placement is

13

appropriate should be considered in determining the appropriateness of the parents'

placement…'" Gagliardo, at 112, quoting Frank G. v. Bd. of Educ., 459 F.3d 356, 364 (2d Cir.

2006). Parents need not show that the placement provides every special service necessary to

maximize the student's potential (Frank G., 459 F.3d at 364-65). When determining whether the

parents' unilateral placement is appropriate, ultimately, the issue turns on whether that placement

is "reasonably calculated to enable the child to receive educational benefits" (Frank G., 459 F.3d

at 364; Gagliardo, 489 F.3d at 115). A private placement is only appropriate if it provides

education instruction specially designed to meet the unique needs of a student (20 U.S.C. §

1401[29]; 34 CFR 300.39[a][1]; Educ. Law § 4401[1]; 8 NYCRR 200.1[ww]; Rowley, 458 U.S.

at 188-89).

      The Supreme Court of the United States has held that the appropriateness of a unilateral

placement turns on whether it is reasonably calculated to enable the child to receive educational

benefits, which is not limited to a single dispositive factor. Bd. of Educ. v. Rowley, 458 U.S.

176, 207 (1982). The Second Circuit cited several factors that may be considered evidence that a

child is receiving an educational benefit, including grades, test scores, and regular advancement,

yet clarified that courts assessing the appropriateness of a parent's unilateral placement must

"consider the totality of the circumstances in determining whether that placement reasonably

serves a child's individual needs." Frank G. 459 F.3d at 364; accord Knable ex rel. Knable v.

Bexley City Sch. Dist., 238 F.3d 755 (6th Cir.2001) (holding that a unilateral private placement

with small classes, where the student made educational progress and grades and behavior

improved, was appropriate). Under the IDEA, to meet the requirements for reimbursement,

parents do not need to show that a private placement provides every single service required to

"maximize their child's potential." Frank G. 459 F.3d at 364; See M.S. ex rel. S.S. v. Bd. of

Educ., 231 F.3d 96, 102 (2d Cir.2000) ("The test for parents' private placement is not perfection."). Parents must only demonstrate that the placement provides "educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction." Frank G. 459 F.3d at 364; Rowley, 458 U.S. at 188–89. "Specially- designed instruction means adapting, as appropriate to the needs of an eligible student under this Part, the content, methodology, or delivery of instruction to address the unique needs that results from the student's disability." 8 NYCRR § 200.1(vv). Where "the hearing record shows that [the Private School] did not provide OT or PT..." and the school "provided programs that assisted the student in developing both fine and gross motor skills," "the lack of these services" is "not sufficient to support a finding that [the Private School] is not appropriate given that these services did not appear to be necessary to the student receiving educational benefits and [Private School] did address the needs to some extent. The student's primary needs related to his attention and academics, and [Private School]...adequately, if not perfectly, addressed them." Application of the Board of Education of the Arlington Central School District, Appeal No. 16- 023 at 24-25

A private school placement must be "proper under the Act" (Carter, 510 U.S. at 12, 15; Burlington, 471 U.S. at 370), i.e., the private school must provide an educational program which meets the student's special education needs. See, Gagliardo, 489 F.3d at 112, 115; Walczak, 142 F.3d at 129. A parent's failure to select a program approved by the State in favor of an unapproved option is not itself a bar to reimbursement (Carter, 510 U.S. at 14). The private school need not employ certified special education teachers or have its own IEP for the student (id. at 14). The Second Circuit has set forth the standard for determining whether parents have carried their burden of demonstrating the appropriateness of their unilateral placement.

"Grades, test scores, and regular advancement may constitute evidence that a child is

receiving educational benefit, but courts assessing the propriety of a unilateral placement consider the totality of the circumstances in determining whether that placement reasonably serves a child's individual needs. To qualify for reimbursement under the IDEA, parents need not show that a private placement furnishes every special service necessary to maximize their child's potential. They need only demonstrate that the placement provides educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction."

(Gagliardo, 489 F.3d at 112, quoting Frank G., 459 F.3d at 364-65).

Here, the Deputy Director of Special Education ("Director") from the Private School testified by affidavit regarding the Private School and the Student (P-Ex. N). His responsibilities include ensuring the implementation of IEPs, assisting and developing curriculum and academic programs, and supervising teachers and teacher assistants (P-Ex. N-1).

The Private School was described as a private and highly specialized special education program for children who suffer from acquired brain injuries or brain-based disorders (P-Ex. N-2). The Private School has an extended 12-month school year calendar and offers all services during its extended school day which runs from 8:30 a.m. to 5:00 p.m. (P-Ex. N-2). This appears to be necessary, especially since the Student is mandated to receive at least 3 hours of related services a day. The Private School is an interdisciplinary program for school-aged students, ages 5 to 21, many of who are non-verbal and non-ambulatory (P-Ex. N-2). Each student requires a 1:1 paraprofessional to assist with activities of daily living and to have access to and benefit from the education program (P-Ex. N-2). Many students also require a 1:1 nurse to attend to the student's health needs (P-Ex. N-2). Most students have a disability classification of Traumatic

Brain Injury and have management needs that are either intensive or highly intensive and require a significant degree or high degree of individualized attention and intervention (P-Ex. N-2).

The Private School provides students with an IEP geared toward improving functioning skills appropriate to their cognitive, physical and developmental levels, through a collaborative and multidisciplinary approach which incorporates best practices from medical, clinical and educational fields (P-Ex. N-2). This includes effective strategies and evidence-based practices including, direct instruction, cognitive strategies, compensatory education, behavior management, physical rehabilitation, therapeutic intervention, social interaction and transition services (P-Ex. N-2). The Private School also offers related services including occupational therapy, physical therapy, speech therapy, vision education services, assistive technology, music therapy, parent counseling and training, and hearing education services (P-Ex. N-3). Each services is provided in 60 minute sessions, on a push-in and pull-out model which ensures that each student's therapeutic goals are addressed in multiple locations (P-Ex. N-3).

The Student has attended the Private School since the 2021/22 school year (P-Ex. N-3). For the 2023/24 school year, the Student attends a 6:1:1 class, with daily direct and small group instruction, which minimizes distractions and enables the Student to attend, receive educational benefits, and make progress (P-Ex. N-4). There are 36 students enrolled at the Private School, all non-ambulatory and nonverbal (T. 197-198). The Student's 6:1:1 class is comprised of students who have similar needs and abilities (P-Ex. N-4). Despite the small classroom, she still requires occasional breaks to increase her levels of regulation (P-Ex. C-30). She also receives an extensive regimen of related services, including individual OT 5x per week, PT 5x per week, SL 5x per week, AT 2x per week, and Music Therapy 3x per week, all delivered in 60-minute sessions (P-Ex. N-4). The Student also requires the assistance of a 1:1 paraprofessional throughout the day, as well as the assistance of a 1:1 nurse throughout the day to address her

17

complicated and extensive medical needs (P-Ex. N-4). The nurse is required because the Student displays epileptic and seizure-like events and needs to be monitored frequently; she uses a basal nerve stimulator placed on her chest when she experiences seizures or seizure like events (T. 200). The Student is also diabetic and needs her glucose levels to be monitored (T. 200). The Director testified that the Student has suffered seizures this school year (T. 207-208). The Private School develops an Individualized Healthcare plan for the Student which lists the Student's diagnoses, interventions and who conducts the interventions (P-Ex. J; T. 227). The document is reviewed often and updated when there is a change to diagnosis or new information from medical providers (T. 228).

The Private School also develops its own IEP for the Student that details her present levels of performance in cognition, math, literacy, and social levels (P-Ex. C). It details her speech and language needs, including expressive and receptive language, pragmatic and social language skills, technology used, and oral/motor feeding needs; occupational therapy needs, including self care, fine motor skills and equipment needed for continued support; physical therapy needs, including her extensive gross motor needs, activities of daily living and functional activities; assistive technology needs, detailing the devices used and how to best use them; music therapy needs including how it has helped stimulate her arousal, attention, and motor skills (P-Ex. C). It also details the goals recommended for each area of need, the progress made, her continued needs and additional concerns (P-Ex. C).

The school day begins at 8:30 and when students arrive paraprofessionals work with the students on their activities of daily living ("ADL") (T. 232). Then students have either academics, therapies or activities (T. 232, 233). At 4:00 p.m. students prepare for dismissal (T. 233). In August 2023, the Student was academically assessed using the Brigance, which assesses language, language development, math, literacy and social skills and from those specific,

measurable, attainable, relevant and time bound goals are developed (T.242). Based on this assessment, the goals developed in the Private School's IEP have changed (T. 243).

The Director testified that at times the Student receives home services, when they cannot be physically present in school, and in that case, the Private School send the paraprofessional to the home to receive her mandated services remotely, provided by the providers (T. 220-221). The nurse has also gone to the Student's home to help with medications and sometimes assists the paraprofessional who has also gone to the house with feeding and showering (T. 310).

With respect to the student's progress at the Private Schools, a finding of progress is not required for a determination that a student's unilateral placement is adequate, but it is a relevant factor to be considered (Gagliardo, 489 F.3d at 115, citing Rafferty v. Cranston Pub. Sch. Comm., 315 F.3d 21, 26-27 [1st Cir. 2002]). However, here, the Student has made progress across academic and related service domains in her educational program and it is anticipated that she will continue to build upon the progress she has made as long as she is provided with continuity in regard to her educational program (P-Ex. C; N-4). The Parent also testified that the Student made progress in that she can follow instructions, can listen, can pay attention, which she was not able to do before (T. 298).

Based on all of the above, I find that the Private School provides the Student with the supports, services and interventions that she requires in order to make meaningful progress in all of her areas of need and that the Private School was an appropriate placement for the Student for the 2023/24 school year.

## EQUITABLE CONSIDERATIONS

Equitable considerations are relevant in determining relief "because the authority to grant reimbursement [under the IDEA] is discretionary." Frank G., 459 F.3d at 363-64

(quoting, Burlington, 471 U.S. at 374). In balancing the equities, I find in favor of the Parent. To the extent possible, the Parent has participated in all aspects of the special education process and communicated her concerns with the District. It has been the District who has failed to communicate with the Parent with regard to medical forms and transportation.

**DECISION**

Based on a review of the record and the facts mentioned above, I find that the District failed to provide the Student FAPE during the 2023/24 school year. I further find that the Parent's unilateral placement at the Private School was appropriate, including the related services, nursing services, and transportation. I am not swayed by the SP's testimony that she reached out to the Private School about the transportation needs of student. The SP should have reached out to the Parent directly and explained what the District could offer so that the Parent could make an informed decision (although the recommendation did not include air-conditioning or limited travel time and there is no testimony as to why that was omitted). I further find that the Student is entitled to updated evaluations at the District expense, since the District has failed to complete a triennial evaluation. I have considered the Parent's other requests for relief in the Due Process Complaint and they have been withdrawn or denied for lack of evidence in the record.

**ORDER**

Based upon the Findings of Fact and Conclusions of Law, it is hereby ordered:

1).     ORDER THAT, the District shall reimburse the Parent and/or directly pay the Private School for the full tuition and fees, including a paraprofessional, and additional related services costs, for the 12-month 2023/24 school year;

2).     ORDER THAT, the District shall reimburse the Parent and/or directly pay the Private Nursing services for the 12-month 2023/24 school year;

3).     ORDER THAT, the District shall reimburse the Parent and/or directly pay the Private

Transportation company for the full costs associated with transporting the Student in a lift-

bus/wheelchair ramp bus with limited travel time of 90 minutes, air-conditioning, and a nurse,

for the 12-month 2023/24 school year;

4).     ORDER THAT, the District shall fund independent evaluations for the Student consisting

of: a neuropsychological evaluation, speech language evaluation, occupational therapy

evaluation, physical therapy evaluation, and assistive technology evaluation; to be conducted by

licensed/certified providers of the Parent's choosing, and to be paid at market rate within 30

calendar days of receiving the reports;

5).     ORDER THAT, the District shall reconvene the CSE to review the updated evaluations

within 30 days of receipt of the evaluation reports (the CSE is still obligated to hold its annual

meeting as per the IDEA, regardless of whether the above ordered IEEs are not completed).

SO ORDERED
DATED:        March 3, 2024

**Vanessa M. Gronbach**
Vanessa M. Gronbach, Impartial Hearing Officer

**NOTICE OF RIGHT TO APPEAL**

Within 40 days of the date of this decision, the parent and/or the **Public School District** has a right
to appeal the decision to a State Review Officer (SRO) of the New York State Education Department
under section 4404 of the Education Law and the Individuals with Disabilities Education Act.

If either party plans to appeal the decision, a notice of intention to seek review shall be personally
served upon the opposing party no later than 25 days after the date of the decision sought to be
reviewed.

An appealing party's request for review shall be personally served upon the opposing party within 40 days
from the date of the decision sought to be reviewed. An appealing party shall file the notice of intention
to seek review, notice of request for review, request for review, and proof of service with the Office
of State Review of the State Education Department within two days after service of the request for
review is complete. The rules of procedure for appeals before an SRO are found in Part 279 of the
Regulations of the Commissioner of Education. A copy of the rules in Part 279 and model forms are
available at http://www.sro.nysed.gov.

Hearing Officer's Findings of Fact and Decision
Case No. 250961

## **EXHIBITS**

District Exhibits

| Ex. | Date | Description | Pages |
|-----|------|-------------|-------|
| 1 | 11/16/22 | IEP | 57 |
| 2 | 11/16/22 | IEP Attendance Page | 1 |
| 3 | 11/16/22 | IEP Meeting Minutes | 4 |
| 4 | 11/16/22 | IEP Translation | 88 |
| 5 | 6/17/23 | Prior Notice Package | 15 |
| 6 | 11/16/22 | Nursing Referral | 1 |
| 7 | 22/23 | Medication Administration Forms | 22 |
| 8 | 11/14/22 | Private School IEP | 70 |
| 9 | 9/30/22 | Quarterly Progress Report | 25 |
| 10 | 6/27/23 | Email to Private School | 3 |
| 11 | 3/21/18 | Medicaid Provider Policy/Billing Handbook | 84 |
| 12 | undated | Unsigned Subpoena Private School | 3 |
| 13 | undated | Unsigned Subpoena Transportation | 2 |
| 14 | 10/30/23 | Signed Subpoena Private School | 3 |
| 15 | 11/2/23 | Affidavit of School Psychologist | 7 |
| 16 | 11/3/23 | Affidavit of Assistant Principal | 2 |
| 17 | 11/7/23 | Subpoena Response Email | 2 |
| 18 | 11/3/23 | Private School Subpoena Response | 6 |
| 19 | 2023/24 | Monthly Attendance | 1 |

Parent Exhibits

| Ex. | Date | Description | Pages |
|-----|------|-------------|-------|
| A | 07/05/2023 | Due Process Complaint | 8 |
| B | 11/28/2022 | District IEP 2023-24 School Year | 57 |
| C | 11/14/2022 | Private School IEP 2023/24SY | 70 |
| D | 06/20/2022 | Ten Day Notice 2023/24 SY | 2 |
| E | 07/01/2023 | Enrollment Contract | 6 |
| F | 07/01/2023 | Transportation Agreement | 6 |
| G | 07/05/2023 | Nursing Agreement | 8 |
| H | 12/21/2022 | Prior Notice Package(PWN/SLL) | 14 |
| I | 01/10/2023 | Medical Forms 2023-24 School Year | 3 |
| J | 09/11/2023 | Individualized School Healthcare Plan | 5 |
| K | 2023-2024 | Diabetic  Healthcare Plan | 2 |
| L | 06/21/2022 | Seizure Action Plan | 3 |
| M | 11/01/2023 | Affidavit of Parent | 3 |
| N | 11/01/2023 | Affidavit of Private School | 5 |

## L.V. v. NYC Department of Education, 03 Civ. 9917 (SDNY)

Parents of children with Individualized Education Programs who received or who may receive an order at the conclusion of an impartial hearing should read the attached notice about possible disclosure of information and documents about their children as part of a federal court litigation.

Translations in Spanish, Arabic, Bengali, Chinese, French, Haitian Creole, Korean, Russian, and Urdu are available on the DOE webpage at https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings

**Notice of Potential Disclosure of Student Education Records**

**Please read this notice carefully**. This is a message about possible disclosure of documents or data that might contain information about your child, if your child has been classified as a student with a disability and has been or may be the subject of a final Impartial Hearing Order.

### I.     Nature of the Lawsuit

This lawsuit challenged the failure of the Department of Education ("DOE") of the City of New York to timely implement orders issued by impartial hearing officers in connection with impartial hearings held pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.* and N.Y. Education Law § 4401, *et seq.* In 2007, the parties entered into a Stipulation of Settlement (the "Stipulation") in which the DOE agreed to timely implement these orders.

In January 2021, the Court granted plaintiffs' motion for the appointment of a special master. On April 14, 2021, the Court entered an Order appointing David Irwin of Thru-Ed as the Special Master.  On May 14, 2021, the Court entered an Order detailing the duties and authority of the Special Master which include, among other things, the authority to review DOE's processes for implementing impartial hearing orders and to recommend to the Court improvements to enable DOE to timely implement orders a. Pursuant to this Order, the Special Master may have access to education records of students, upon DOE's compliance with the Family Education Rights and Privacy Act (20 U.S.C. § 1232g; 34 C.F.R. Part 99) ("FERPA").

## II.     Data Ordered to Be Disclosed

In order for the Special Master to perform his duties, the Court has directed the DOE to provide the Special Master (and employees and consultants at Thru-Ed) with access to records containing confidential student record information, including, but not limited to, documents submitted in the impartial hearing process, impartial hearing orders, data about compliance, and students' special education documents, such as individualized education programs, evaluations, authorizations, invoices, etc. The Special Master is required to keep any student documents and information confidential. No student-specific information will be shared with plaintiffs' counsel unless the student's parent specifically consents. If there is any student-specific information in the Special Master's reports to the Court, that information would not be made public.

The Special Master will use this information only for his work to review DOE's processes for implementing impartial hearing orders and to recommend to the Court improvements to enable DOE to timely implement orders.  The disclosure of this information does not affect any of your rights as a parent to seek special education services for your child.

## IV.     Objections to Disclosure

If you agree to the disclosure of this information to the Special Master, you do not need to do anything more.

If you do not want your child's information shared with the Special Master, you must object to this disclosure by submitting an objection to DOE's attorney, addressed to:

> Jeffrey S. Dantowitz
> NYC Law Department
> 100 Church Street, Room 2-121
> New York  NY  10007

or via email at LVObjection@law.nyc.gov.  Please reference the *LV v. DOE* lawsuit (Case No. 03-9917) when writing.  An Objection Form accompanies this Notice, though no written objection will be rejected if it is not submitted on this form.  If you object, no records containing you and your child's personally identifiable information or other FERPA-protected information will be provided to the Special Master, although nominal and incidental disclosure of your child's name may occur.  **Any objections must be received by December 3, 2021 or for impartial hearing orders issued after November 12, 2021, within 3 weeks of the issuance of the impartial hearing order**.

**If you would like more information about this notice, please contact the attorneys for plaintiffs**, **Rebecca Shore, of Advocates for Children of New York, Inc. at 646-532-6078.**

**OBJECTION TO DISCLOSURE OF RECORDS**
**LV v. DOE, 03 Civ. 9917 (SDNY)**

If you agree to the release of information about your child to the Special Master appointed in *L.V. v. DOE*, you do not need to complete this form.

If you object to the release of information about your child to the Special Master appointed in *L.V. v. DOE*, please compete and return this form to:

> Jeffrey S. Dantowitz
> NYC Law Department
> 100 Church Street, Room 2-121
> New York, NY  10007

or via email at LVObjection@law.nyc.gov

Child's name: _____

Name: _____

Address: _____

Impartial Hearing Order Case # (if known): _____

Date of Order (if known): _____

> If you object to the release of your confidential information, please check the line below:
>
> _____   I do not agree to have my confidential records disclosed to the Special Master in *L.V. v. DOE*.

_____                    _____
Date                                                      Please sign here

If you object to the release of information, your objection must be received by December 3, 2021 or, for impartial hearing orders issued after November 12, 2021, within 3 weeks of the issuance of the impartial hearing order.

    \*   \*   \*   If you do not notify the DOE of your objections to the documents being released, you child's information will be provided to the Special Master appointed in *LV v. DOE*, 99 Civ. 9917 (SDNY) and/or consultants and employees of Thru-Ed.   The information will remain confidential and the disclosure of this information will not affect any of your rights to seek special education services for your child.

| |
|---|
| للاطلاع على هذا المستند باللغة العربية، قُم بزيارة الموقع الإلكتروني [https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings](https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings) |
| YgÄs Ȁ Ä Ȁ Ȁ náʹl á [https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings](https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings) náʹ ƒ́ |
| 若要以中文查看，請上網到 [https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings](https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings) |
| Pour consulter ce texte en français, allez sur [https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings](https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings) |
| Pou wè tèks sa a an kreyòl ayisyen, ale sou  [https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings](https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings) |
| 본 문서를 한국어로 보시려면 다음 웹사이트를 이용하십시오: [https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings](https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings) |
| Для просмотра документа на русском языке посетите [https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings](https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings) |
| Para ver este contenido en español, visite  [https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings](https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings) |
| اس کو اردو میں دیکھنے کے لیے  [https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings](https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings) پر جائں |