UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
**SYLVIA ARJE**, as Parent and Natural
Guardian of **Z.A.,** and **SYLVIA ARJE**,
Individually, et al.,

<em>Plaintiffs,</em>

-v-                                                                                          **24-cv-03115**

**DAVID C. BANKS**, in his official capacity
as Chancellor of the New York City Department
of Education, and the **NEW YORK CITY
DEPARTMENT OF EDUCATION**,

<em>Defendants.</em>
-------------------------------------------------------------X

**PLAINTIFFS' MEMORANDUM OF LAW IN
<u>SUPPORT OF A PRELIMINARY INJUNCTION</u>**

Ataur Raquib, Esq. (5860523)
Brain Injury Rights Group, Ltd.
Attorneys for Plaintiffs
300 East 95th Street, Suite 130
New York, New York 10128
ataur@pabilaw.org

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES…………………………………………………………....…...….…..i

PRELIMINARY STATEMENT…………………………………………………………....……...1

STATEMENT OF FACTS…………………………………………………………………….…..1

LEGAL BACKGROUND………………………………………………………………………...2

ARGUMENT…………………………………………………………….……...……..…...8

I.     PLAINTIFFS HAVE STANDING AND THE COURT HAS
SUBJECT MATTER JURISDICTION OVER THE INSTANT MATTER……...8

II.    PLAINTIFFS HAVE EXHAUSTED ALL ADMINISTRATIVE
REMEDIES IN THIS MATTER…………………………………………………9

III.   PLAINTIFFS SATISFY THE STANDARD FOR A
PRELIMINARY INJUNCTION……………………………………………………14

A. Each Plaintiff Can Show Irreparable Harm ……………….....…….……...16

i.  Irreparable harm to Z.A…………………………………………………17

ii.  Irreparable harm to D.D.L.C…………………………………………19

iii.  Irreparable harm to S.J.D……………………………………………20

B. Each Plaintiff Can Demonstrate a Likelihood of Success
on the Merits...……………………………………………………………..20

C. Each Plaintiff Can Show that the Preliminary Injunction
is in the Public Interest…………………………………………………….23

CONCLUSION……………….....………………....…………………  …………………..25

# **TABLE OF AUTHORITIES**

*Page(s)*

## **Federal Cases**

*Abrams v. Carranza,*
  2020 U.S. Dist. LEXIS 139881, at *2 (S.D.N.Y. Aug. 4, 2020) ............................................... 14

*A.R. ex rel. R.V. v. New York City Dep't of Educ.,*
  407 F.3d 65 (2d Cir. 2005) ...................................................................................................... 11

*A.T. v. New York State Educ. Dep't,*
  No. 98-CV-4166 (JG), 1998 WL 765371 (E.D.N.Y. Aug. 4, 1998) ................................... passim

*Agudath Israel of Am. v. Cuomo,*
  983 F.3d 620 (2d Cir. 2020) .................................................................................................... 23

*Antkowiak by Antkowiak v. Ambach,*
  838 F.2d 635 (2d Cir. 1988) ...................................................................................................... 6

*B.D. v. D.C.,*
  817 F.3d 792 (D.C. Cir. 2016) ................................................................................................. 12

*Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley,*
  458 U.S. 176 (1982) .................................................................................................................. 23

*Beal v. Stern,*
  184 F.3d 117 (2d Cir. 1999) ..................................................................................................... 15

*Blazejewski By & Through Blazejewski v. Bd. of Educ. of Allegany Cent. Sch. Dist.,*
  560 F. Supp. 701 (W.D.N.Y. 1983) ....................................................................... 11, 13, 16, 22

*Butler v. S. Glens Falls Cent. Sch. Dist.,*
  106 F. Supp. 2d 414 (N.D.N.Y. 2000) ..................................................................................... 13

*Cappillino v. Hyde Park Cent. Sch. Dist.,*
  40 F. Supp. 2d 513 (S.D.N.Y. 1999) ....................................................................................... 13

*Cave v. E. Meadow Union Free Sch. Dist.,*
  514 F.3d 240 (2d Cir. 2008) .................................................................................................... 11

*Chen-Oster v. Goldman, Sachs & Co.,*
  251 F. Supp. 3d 579 (S.D.N.Y. 2017) ....................................................................................... 8

*Coleman v. Newburgh Enlarged City Sch. Dist.,*
  503 F.3d 198 (2d Cir. 2007) .................................................................................................... 11

*Consol. Brands, Inc. v. Mondi*,
    638 F. Supp. 152 (E.D.N.Y. 1986) ...................................................... 16

*Coronel v. Decker*,
    449 F. Supp. 3d 274 (S.D.N.Y. 2020) ................................................. 23

*Doe v. New York Univ.*,
    666 F.2d 761 (2d Cir. 1981) ................................................................. 15

*Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter*,
    510 U.S. 7 (1993) ...................................................................................... 7

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ................................................................................. 8

*Heldman on Behalf of T.H. v. Sobol*,
    962 F.2d 148 (2d Cir. 1992) .................................................................... 8

*Honig v. Doe*,
    484 U.S. 305 (1988) ............................................................................... 11

*In re Sac & Fox Tribe of Mississippi in Iowa/Meskwaki Casino Litig.*,
    340 F.3d 749 (8th Cir. 2003) ................................................................ 23

*J.K. v. Council Rock Sch. Dist.*,
    833 F. Supp. 2d 436 (E.D. Pa. 2011) ................................................... 11

*J.S. ex rel. N.S. v. Attica Cent. Sch.*,
    386 F.3d 107 (2d Cir. 2004) .................................................................. 11

*Kantak v. Bd. of Educ., Liverpool Cent. Sch. Dist.*,
    No. 90-CV-4, 1990 WL 36803 (N.D.N.Y. March 30, 1990) .................... 16

*L.V. v. New York City Dep't of Educ.*,
    No. 03-CV-9917 (LAP), 2021 WL 663718 (S.D.N.Y. February 18, 2021) ........................... 4, 5

*Levine v. Greece Cent. Sch. Dist.*,
    No. 08-CV-6072, 2009 WL 261470 (W.D.N.Y. February 4, 2009) ......................... 12

*Ligon v. City of New York*,
    925 F. Supp. 2d 478 (S.D.N.Y. 2013) ................................................. 23

*M.G. v. New York City Dep't of Educ.*,
    15 F. Supp. 3d 296 (S.D.N.Y. 2014) .................................................... 11

*M.H. v. Bristol Bd. of Educ.*,
    169 F. Supp. 2d 21 (D. Conn. 2001) .................................................... 13

*M.W. v. New York City Dep't of Educ.*,
No. 15CV5029, 2015 WL 5025368 (S.D.N.Y. Aug. 25, 2015) ............................................... 15

*Maine v. Thiboutot*,
448 U.S. 1 (1980) ................................................................................................................ 21

*McAdams v. Bd. of Educ. of Rocky Point Union Free Sch. Dist.*,
216 F. Supp. 2d 86 (E.D.N.Y. 2002) ..................................................................................... 11

*Mrs. W. v. Tirozzi*,
832 F.2d 748 (2d Cir. 1987) .................................................................................................. 13

*Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*,
297 F.3d 195 (2d Cir. 2002) ................................................................................................. 10

*New York ex rel. Schneiderman v. Actavis PLC*,
787 F.3d 638 (2d Cir. 2015) ................................................................................................. 15

*Nieves-Marquez v. Puerto Rico*,
353 F.3d 108 (1st Cir. 2003) ................................................................................................ 12

*Olson v. Robbinsdale Area Sch.*,
No. CIV.04-2707 RHK/AJB, 2004 WL 1212081 (D. Minn. May 28, 2004).......... 16, 21, 22, 23

*Petties v. D.C.*,
238 F. Supp. 2d 114 (D.D.C. 2002) ....................................................................................... 23

*Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*,
288 F.3d 478 (2d Cir. 2002) ......................................................................................... 9, 10, 11

*Porter v. Bd. of Trustees of Manhattan Beach Unified Sch. Dist.*,
307 F.3d 1064 (9th Cir. 2002) .............................................................................................. 12

*R.B. ex rel. L.B. v. Bd. of Educ. of City of New York*,
99 F. Supp. 2d 411 (S.D.N.Y. 2000) ..................................................................................... 13

*Reid v. Bd. of Educ., Lincolnshire-Prairie View Sch. Dist. 103*,
765 F. Supp. 965 (N.D. Ill. 1991) ......................................................................................... 21

*Rutherford v. Fla. Union Free Sch. Dist.*,
No. 16-CV-9778 (KMK), 2019 WL 1437823 (S.D.N.Y. March 29, 2019) ........... 12, 13, 21, 22

*S.W. v. New York City Dep't of Educ.*,
646 F. Supp. 2d 346 (S.D.N.Y. 2009) ................................................................................... 8, 9

*Sajous v. Decker*,
No. 18-CV-2447 (AJN), 2018 WL 2357266 (S.D.N.Y. May 23, 2018) .................................. 23

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010) ........................................................................................ 14

*SJB ex rel. Berkhout v. New York City Dep't of Educ.*,
    No. 03 CIV. 6653 (NRB), 2004 WL 1586500 (S.D.N.Y. July 14, 2004) ...................... 7, 12, 13

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) .................................................................................................. 8

*Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*,
    60 F.3d 27 (2d Cir. 1995) ......................................................................................... 15

*Tucker Anthony Realty Corp. v. Schlesinger*,
    888 F.2d 969 (2d Cir. 1989) ..................................................................................... 16

*V.W. by & through Williams v. Conway*,
    236 F. Supp. 3d 554 (N.D.N.Y. 2017) ...................................................................... 23

*Y.S. on behalf of Y.F. v. New York City Dep't of Educ.*,
    No. 1:21-CV-00711 (MKV), 2021 WL 1164571 (S.D.N.Y. Mar. 26, 2021) ................ 7, 22, 23

## Federal Statutes

20 U.S.C. § 1400(d)(1)(A) ................................................................................................ 9

20 U.S.C. § 1401(11), 1414(d) ......................................................................................... 9

20 U.S.C. § 1414(d)(1)(A) ............................................................................................... 10

20 U.S.C. § 1415 ............................................................................................................. 15

20 U.S.C. § 1415(i) .......................................................................................................... 12

20 U.S.C. § 1415(i) (1) (A) .............................................................................................. 6

20 U.S.C. § 1415(i)(2)(A) ................................................................................................ 12

20 U.S.C. § 1415(i)(l)(A) ................................................................................................. 21

20 U.S.C. § 1415(l) .......................................................................................................... 10

20 U.S.C. § 1415(i)(2)(A) ................................................................................................ 12

42 U.S.C. § 1983 ............................................................................................................... 22

## State Statutes

N.Y. Educ. Law. § 4044[4][a] .......................................................................................... 15

N.Y. Educ. Law § 4401 (McKinney) ............................................................................... 10

N.Y. Educ. Law § 4404 ............................................................................................... 8, 10

N.Y. Educ. Law § 4404 (1) (c) (McKinney) ................................................................... 6

**Federal Regulations**

34 C.F.R. § 518(a) ........................................................................................................ 15

**State Regulations**

8 NYCRR § 200.5(i)(1) ................................................................................................ 10

**Other Authorities**

S. REP. 94–168 ............................................................................................................. 24

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted in support of Plaintiffs' instant motion for a preliminary injunction, ordering Defendants **DAVID C. BANKS**, in his official capacity as Chancellor of the New York City Department of Education and the **NEW YORK CITY DEPARTMENT OF EDUCATION (**collectively "DOE"), to implement and/or otherwise comply with each unappealed final administrative order and/or decision[1] relative to each Plaintiff and each Plaintiff's respective Student with disabilities, as set forth more fully in Plaintiffs' Complaint, to fully fund the cost of each Student-Plaintiff's attendance at the International Institute for the Brain ("iBRAIN"), including tuition, related services, special transportation, and nursing where applicable, in accordance with each Plaintiff's final administrative order.

## STATEMENT OF FACTS

Each Plaintiff filed a Due Process Complaint ("DPC") against DOE alleging, in essence, that (1) DOE denied them and their respective child, each a disabled Student, a Free Appropriate Public Education ("FAPE"), relative to the school year outlined in each DPC, as set forth more fully in the Plaintiffs' Complaint; (2) each Plaintiff's unilateral placement of their Student at iBRAIN, relative to the school year outlined in each DPC, was appropriate; and (3) equitable considerations favored an award of total funding of tuition and related services, and associated transportation services, by DOE to each respective Plaintiff.

Each Plaintiff's respective DPC was assigned an IHO case number. Each Plaintiff's DPC was adjudicated on the merits, resulting in a final administrative order and/or decision favoring each Plaintiff. In each Plaintiff's due process proceedings, DOE was found to have denied each

---

[1] The final administrative orders and decisions referenced herein pertain to each final Impartial Hearing Officer ("IHO") Findings of Fact and Decision ("FOFD") and/or each SRO decision relative to each respective Plaintiff, and each Plaintiff's disabled Student as set forth more fully in Plaintiffs' Complaint.

Plaintiff's Student a FAPE, iBRAIN was found to have been an appropriate unilateral placement, and equitable considerations favored full tuition reimbursement to each Plaintiff and/or payment to iBRAIN for each Plaintiff's disabled Student relative to each school year in question.

Each Plaintiff's IDEA[2] proceeding resulted in a final administrative order and/or decision awarding total funding for tuition and related services/costs to each Plaintiff for each Plaintiff's unilateral placement of their respective child at iBRAIN—total funding for tuition, related services, and special transportation.

To date, DOE has failed to fully fund and/or refused to comply with each final administrative order issued in favor of each Plaintiff in their respective underlying IDEA proceeding. DOE has failed and/or refused to fully fund the costs of each Plaintiff's disabled Student's attendance at iBRAIN—failed to reimburse each Parent and/or pay iBRAIN directly—for the school year relative to each Plaintiff's DPC.

## LEGAL BACKGROUND

DOE has a long history of failing to provide students with disabilities the individualized, specialized educational services they need and deserve. In 2003, a group of plaintiffs started a class-action lawsuit against DOE for its systemic failure to implement final administrative orders promptly. *See L.V. v. NYC DOE*, 03-cv-9917 (RJH).

In 2007, DOE settled with the plaintiffs and voluntarily entered into a Stipulation and Agreement of Settlement that required DOE to improve the rate at which it implements final administrative orders. Under the Stipulation, DOE must implement final administrative orders within thirty-five (35) days (unless the order sets a different deadline for implementation). DOE was also required to meet and maintain specific implementation performance benchmarks to exit

---

[2] Individuals with Disabilities Education Act.

the Stipulation. Yet since voluntarily entering the Stipulation, DOE has consistently failed to meet even the first (and lowest) benchmark. DOE has also refused to create a corrective action plan required by the Stipulation to prevent such repeated failures and has denied responsibility for its shortcomings.

In 2010, the Plaintiffs in *L.V. v. NYC DOE*, 03-cv-9917 (RJH) moved for the appointment of a Special Master to identify the systemic changes necessary for DOE to meet the benchmarks of the Stipulation mentioned above and to compel DOE to take the steps necessary to meet the benchmarks. The court denied the Plaintiffs' 2010 motion for a Special Master without prejudice to renew if the DOE's Implementation Unit did not produce the promised results. DOE never met the original Stipulation's benchmarks, falling short of even the first benchmark.

DOE's implementation failures have continued to impose extreme hardships on students with disabilities, parents, service providers, and private schools that meet the needs of children with disabilities, which DOE cannot meet. In some cases, service providers have been forced to stop providing services for children with disabilities—even dis-enrolling them from their private educational placement. Those who continue to provide services can have hundreds of unpaid invoices waiting for payment or processing by DOE. The pleadings in *L.V.* detail how parents either could not get their children the services they needed or must bear the burden of paying for those services and waiting months, sometimes years, for reimbursement.

Recently, the Plaintiffs in *L.V.* once again petitioned the Court to have a Special Master appointed, arguing that in its case, as in similar situations in which New York City ("NYC") agencies failed to abide by the terms of stipulations, a Special Master is appropriate.

To support its most recent application for a Special Master, over ten years after entering the underlying Stipulation with DOE,[3] the Plaintiffs in *L.V.* alleged that DOE:

  i.    frustrated the purpose of the Stipulation;
  ii.   resisted making the types of structural changes needed to comply with the Stipulation;
  iii.  obstinately failed to comply with its obligations under the Stipulation; and/or
  iv.   failed to fully comply with the Stipulation.

To date, DOE has never complied with the Stipulation it entered into in *L.V.* Now, over twenty years after the *L.V.* lawsuit was started, students with disabilities are still not fully receiving the services they need, deserve, and are entitled to.

The Plaintiffs in *L.V.* attempted to work with DOE and its Implementation Unit for over a decade to create lasting improvements to its systems and structure. But DOE's performance is worse now than before the Implementation Unit was created. Because the Implementation Unit undeniably failed, the Plaintiffs in *L.V.* once again sought outside intervention as a Court-Appointed Special Master. By order dated January 28, 2021, the Hon. Loretta A. Preska Granted the L.V. Plaintiffs' motion to appoint a Special Master. *L.V. v. NYC DOE*, 03-cv-9917, at 225 (LAP).

On February 18, 2021, Judge Preska issued a separate Memorandum and order in *L.V. v. New York City Dep't of Educ.*, No. 03-CV-9917 (LAP), 2021 WL 663718 (S.D.N.Y. February 18, 2021) (Case No. 03-cv-9917, order granting Plaintiffs' motion for declaratory relief in Dkt. No. 234). Judge Preska noted that the Plaintiffs in *L.V.* are children with disabilities who have obtained administrative orders requiring DOE to pay for all or part of their private school tuition. Judge

---

[3] See Docket Sheet in 1:03-cv-9917 (LAP) at entry 206.

Preska further noted that ongoing litigation in *L.V.* concerns DOE's repeated failures to implement the administrative orders the children obtained, as mentioned above. *Id.*

The COVID-19 Pandemic compounded the *L.V.* Plaintiffs' troubles. At the start of the Pandemic, DOE—citing changed circumstances[4] and a general obligation to "safeguard the public coffers"—stopped funding Pendency placements as required by Pendency Orders[5] and/or refused to pay tuition as required by final orders to private schools whose remote-learning plans did not receive DOE approval. *Id.* Because many families and schools could not afford the financial burden of attending a private institution, several qualifying children lost their private school placements or otherwise had their educational services curtailed. Those interruptions in services— at a juncture critical to children's learning and development—are especially harmful to students with disabilities. *Id.*

In mid-March 2020, New York shuttered schoolhouses in response to the COVID-19 Pandemic, and schools generally transitioned to some form of remote learning. *Id.* Between March and May 2020, DOE was informed several times by Plaintiffs' counsel in *L.V.* that unless DOE ceased its unlawful behavior and complied with final administrative orders directing DOE to pay Plaintiffs' private school tuition for the 2019–2020 school year, several qualifying students would not be able to re-enroll at their schools.

During the same timeframe, DOE requested vast swaths of information from private schools about each school's remote-learning plan. For schools that failed to reply to DOE's requests,

---

[4] Judge Preska noted that the IDEA contains no "changed circumstances" exception to its finality rule, and rejected DOE's invitation to rewrite the Act, especially because both Congress and the Department of Education declined to suspend the IDEA's core mandates during the pandemic. *Id.*

[5] In 2003, the *L.V.* Plaintiffs sued DOE for its repeated failure to implement final orders. Likewise, the current action before Judge Preska appears to deal with DOE's failure to implement final orders. Plaintiffs are aware that DOE failed to implement Pendency Orders, and/or ceased Pendency funding at the beginning of the Pandemic as the student herein is one of many that brought an action against DOE, when such Pendency funding improperly ceased. *Abrams v. Carranza*, No. 20-CV-5085 (JPO).

schools whose responses to DOE's requests were insufficient, and/or schools whose remote-learning plans DOE found inadequate—evaluated according to some non-public standard—DOE withheld and/or decreased tuition payments.

DOE justified the abovementioned policy as an exercise of its obligation to "protect the public fisc"—even though it acknowledged that final orders were in place. To date, DOE still has not implemented many orders, including some issued both before and after the general shift to remote learning,[6] even though guidance from the New York State Education Department instructs that private schools "are authorized...to charge for educational placements based on enrollment."[7]

Ultimately, the Plaintiffs in *L.V.* asserted that DOE's refusal to implement final orders violated the IDEA, New York law, and the Stipulation entered into almost a decade ago. DOE countered that its actions did not violate the IDEA and were authorized by New York law and the Stipulation mentioned above. Judge Preska's response to DOE's contentions was concise and direct—"None of Defendants' contentions holds any water." *L.V. v. NYC DOE*, 03-cv-9917, at 225 p.12. Judge Preska went on to hold that both the IDEA and New York's Education Law make plain that an IHO's order "shall be final, except that any party involved in such hearing may appeal such decision."[8] If no appeal is taken, the IHO's order is binding on the parties, "and no further review appears to be contemplated under the [IDEA]." *Id.*, *Quoting, Antkowiak by Antkowiak v. Ambach*, 838 F.2d 635, 641 (2d Cir. 1988).

---

[6] DOE represented to Judge Preska that it would "pay in full all impartial hearing orders resulting from a hearing that took place on or after April 1, 2020."

[7] N.Y. STATE EDUC. DEP'T, PROVISION OF SERVICES TO STUDENTS WITH DISABILITIES DURING STATEWIDE SCHOOL CLOSURES DUE TO NOVEL CORONAVIRUS (COVID19) OUTBREAK IN NEW YORK STATE, 12 (Mar. 27, 2020) (emphasis added). When confronted with that guidance in relation to a child's placement, DOE nevertheless insisted on reviewing and approving the school-at-issue's remote-learning plan.

[8] 20 U.S.C. § 1415(i) (1) (A); accord N.Y. Educ. Law § 4404 (1) (c) (McKinney) ("The decision of the [IHO] shall be binding upon both parties unless appealed to the [SRO].").

Undeniably, the efficacy of the IDEA's administrative review process hinges on the parties' adherence to final administrative orders. *L.V. v. NYC DOE*; *SJB ex rel. Berkhout v. New York City Dep't of Educ.*, No. 03 CIV. 6653 (NRB), 2004 WL 1586500, at *4 (S.D.N.Y. July 14, 2004). Orders not appealed, such as those here, are "final," and DOE's only lawful course of action is to implement them. *Id.*, *see Y.S. on behalf of Y.F. v. New York City Dep't of Educ.*, No. 1:21-CV-00711 (MKV), 2021 WL 1164571 (S.D.N.Y. Mar. 26, 2021).

In *L.V.*, DOE argued that the IDEA, and by extension, the New York statutes implementing the IDEA, do not prohibit DOE's actions because the facts underlying the orders had changed;[9] Judge Preska found this was not the case as the IDEA contains no "changed circumstances" exception to its finality rule. *Id.* As such, Judge Preska rejected DOE's invitation to rewrite the IDEA—both Congress and the Department of Education declined to suspend the IDEA's core mandates during the Pandemic. *See* footnote five *supra. Id.*

Judge Preska found that under both the IDEA and the New York statutes implementing it, DOE acted unlawfully by withholding tuition payments to each Student's private school as was required by final administrative orders until DOE approved the private school's remote-learning plan. *Id.*

Judge Preska concluded that DOE's situation did not afford it a roving commission to re-evaluate the propriety of final administrative orders that the IDEA and New York law make plain are final and binding; hence, the Court found that DOE's only lawful course of action was, and is, to implement those administrative orders, "full stop." *Id.* The Court held that the *L.V.*

---

[9] Judge Preska found that DOE failed to marshal any authority to support its position, which was wholly unsurprising because, if correct, DOE's position would endow school districts with the authority to unilaterally reassess the facts underlying final, binding administrative orders. *Id.* As a result, the IDEA's administrative review framework would be turned on its head–it would be backward indeed if DOE, the very same public school system that failed to meet the child's needs in the first place, could refuse to fund a student's placement at a private school simply because that private school lacks DOE's stamp of approval. *Id.* citing, *Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter*, 510 U.S. 7, 14 (1993).

Plaintiffs were entitled to a declaration that DOE's refusal to implement final orders until DOE approves a school's remote-learning plan violates Section 1415 of the IDEA and N.Y. Educ. Law § 4404. *Id.*

Judge Preska's holding in *L.V.* demonstrates DOE's absolute, unqualified obligation to comply with and fully implement final administrative orders, regardless of the circumstances. Even so, DOE continues its failure and/or refusal to implement and/or comply with final administrative orders such as those in the case at a bar.

## ARGUMENT

I.   **PLAINTIFFS HAVE STANDING AND THE COURT HAS SUBJECT MATTER JURISDICTION OVER THE INSTANT MATTER**

Generally, to establish standing, a Plaintiff must show an injury in fact. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016), *as revised* (May 24, 2016), as revised (May 24, 2016). The "violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," where the violation "entail[s] a degree of risk sufficient to indicate a resulting of concrete harm." *Id.* at 1550, *see Heldman on Behalf of T.H. v. Sobol*, 962 F.2d 148, 154 (2d Cir. 1992). ("Congress may create a statutory right the alleged violation of which constitutes injury in fact.").

Standing is generally determined when the Complaint is filed. *Chen-Oster v. Goldman, Sachs & Co.*, 251 F. Supp. 3d 579, 589 (S.D.N.Y. 2017); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 175 (2000)). In this way, it is well-established that "[t]he denial of…a procedural right created by the IDEA. .. constitutes an injury in fact sufficient to satisfy the standing requirement." *S.W. v. New York City Dep't of Educ.*, 646 F. Supp. 2d 346, 358 (S.D.N.Y.

8

2009); *see also Cruz v. New York City Dep't of Educ.*, 18-CV-121440 (PGG), Docket Entry No. 14, at **9–11 (S.D.N.Y January 9, 2019).

Here, DOE has failed and/or refused to implement or comply with each unappealed IHO FOFD or State Reviewing Officer (SRO) Decision, all of which direct, and order DOE to fully fund the Plaintiff's tuition, related services, and special transportation costs for the Plaintiff's placement at iBRAIN for the school year at issue. This failure and/or refusal by DOE denies each Plaintiff their right, under the IDEA, to full DOE funding of their placement at iBRAIN. As such, each Plaintiff here has standing to commence and maintain this action.

## II.   PLAINTIFFS HAVE EXHAUSTED ALL ADMINISTRATIVE REMEDIES IN THIS MATTER

The IDEA seeks to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A).

In effect, Congress sought to incorporate students with disabilities into the public education system by requiring school officials and parents of a child with disabilities to design an Individualized Education Program ("IEP") for each year of the child's education. *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 482 (2d Cir. 2002) (stating that the IEP is "the central mechanism by which public schools ensure that their disabled students receive a free appropriate public education."); 20 U.S.C. § 1401(11), 1414(d). Under the statute, the IEP is a written statement that sets forth, among other things, the child's present levels of educational performance, measurable annual goals, special education and related services, supplementary aids and services to be provided to the child, and program modifications or support for school

personnel, as well as projected dates for the beginning of such services and modifications. See 20 U.S.C. § 1414(d)(1)(A).

The IDEA's current statutory scheme also reflects a concern that "parental input into the creation of the IEP would not be sufficient to safeguard a child's right to a free and appropriate education," in that Congress also requires states to offer parents and students with disabilities procedural safeguards to challenge the decisions of local educational agencies. *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 197 (2d Cir. 2002). Following this mandate, New York law provides a two-tier system of administrative review. *Id.*; N.Y. Educ. Law § 4404. Parents may first challenge the IEP determination through an impartial due process hearing, in which the decision of the presiding IHO is binding on all parties unless appealed to the Office of State Review. *Id.*; *see also* 8 NYCRR § 200.5(i)(1).[10]

An "appeal may be taken to either the state or federal courts only after the SRO has rendered a determination [from a determination by an IHO]." *Murphy*, 297 F.3d at 197. Generally, only a party aggrieved by the SRO findings may appeal a decision to the state or federal court. *Id.*; NY CRR 200.5(k).

The IDEA requires a party to exhaust all administrative remedies before seeking judicial review. *Polera*, 288 F.3d at 483 (quoting 20 U.S.C. § 1415(l)). Exhaustion of remedies is not necessary, however, where (1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to

---

[10] New York has created a complex administrative scheme to implement the mandates of the IDEA. Article 89 of the New York Education Law (entitled "Children with Handicapping Conditions"), N.Y. Educ. L. N.Y. Educ. Law § 4401 (McKinney), sets forth the two-tiered system of administrative review, while the State Education Department's regulations further detail the nature of the proceedings, the due-process rights afforded to both parties and time limitations in rendering a decision for such hearings. *See Does v. Mills*, No. 04 Civ. 2919 (RWS), 2005 WL900620, at *2 (S.D.N.Y. Apr. 18, 2005).

the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies. *Id.*

"[T]he exhaustion requirement does not apply 'in situations in which exhaustion would be futile." *Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198, 205 (2d Cir. 2007); quoting *Polera*, 288 F.3d at 488. "To show futility, a plaintiff must demonstrate that adequate remedies are not reasonably available or that the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process." *Id.* (citation and quotation marks omitted). Futility may exist where the case involves "systemic violations that could not be remedied by local or administrative agencies." *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 249 (2d Cir. 2008); *accord J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 113 (2d Cir. 2004).

Pursuing an administrative remedy in this case would be futile; thus, exhaustion is not required. *M.G. v. New York City Dep't of Educ.*, 15 F. Supp. 3d 296 (S.D.N.Y. 2014)(citing *Honig v. Doe*, 484 U.S. 305 (1988)); *McAdams v. Bd. of Educ. of Rocky Point Union Free Sch. Dist.*, 216 F. Supp. 2d 86 (E.D.N.Y. 2002). Exhaustion is not required where, as here, each Plaintiff seeks relief that an administrative tribunal cannot provide.

Relative to this matter, administrative officers such as IHOs and the SROs lack the power to enforce FOFDs and SRO Decisions. *See, e.g., J.K. v. Council Rock Sch. Dist.*, 833 F. Supp. 2d 436 (E.D. Pa. 2011); *McAdams*, 216 F. Supp. 2d 86, SRO Dec. No. 04–85 (2004). Thus, seeking an administrative remedy from an IHO or SRO would be futile for the Plaintiffs here.[11] Additionally,

---

[11] *A.R. ex rel. R.V. v. New York City Dep't of Educ.*, 407 F.3d 65, 78 n.13 (2d Cir. 2005) (noting that IHOs have no enforcement mechanism of their own), SRO Nos. : 04-100 & 04-007 (recognizing that enforcement of prior orders of an IHO and/or a SRO are not properly determined by a SRO), SRO No. 01-086 (holding that petitioner's enforcement request was not properly before a SRO, petitioner's remedy was to seek judicial enforcement of the IHO's tuition reimbursement award), SRO No. 99-4, (holding that respondent's remedy was to seek enforcement in state or federal court, citing *Blazejewski By & Through Blazejewski v. Bd. of Educ. of Allegany Cent. Sch. Dist.*, 560 F. Supp. 701 (W.D.N.Y. 1983), *A.T. v. New York State Educ. Dep't*, No. 98-CV-4166 (JG), 1998 WL 765371 (E.D.N.Y. Aug. 4, 1998)) and SRO Nos.: 06-044, 02-086, 04-006, 02-011 & 97-64).

where DOE has failed to implement a final administrative order, such as the order of an IHO, parents need not seek another administrative order—they may seek enforcement through the judicial system. *SJB ex rel. Berkhout*, 2004 WL 1586500. The rationale is that where, as in this case, a hearing officer (who has expertise in education) has already determined the Student's educational status, there is no need to send the case back to the administrative forum to enforce an administrative determination—particularly as administrative officers in IDEA proceedings have no authority to enforce their orders. *See Levine v. Greece Cent. Sch. Dist.*, No. 08-CV-6072, 2009 WL 261470 (W.D.N.Y. February 4, 2009), *aff'd,* 353 F. App'x 461 (2d Cir. 2009).

There is a split in the Circuits as to whether the IDEA—20 U.S.C. § 1415(i)(2)(A)—provides a cause of action to enforce a favorable administrative order in federal court. *Rutherford v. Fla. Union Free Sch. Dist.*, No. 16-CV-9778 (KMK), 2019 WL 1437823 (S.D.N.Y. March 29, 2019). 20 U.S.C. § 1415(i) grants "[a]ny party aggrieved by the findings and decision" of a hearing officer "the right to bring a civil action... in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy." 20 U.S.C. § 1415(i)(2)(A). Compare, *B.D. v. D.C.*, 817 F.3d 792, 801–02 (D.C. Cir. 2016)(holding that IDEA does not provide plaintiffs an enforcement cause of action but noting that § 1983 may provide such a cause of action to enforce a hearing officer's decision), *with Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 115–17 (1st Cir. 2003)(allowing enforcement action under 20 U.S.C. § 1415(i)(2)(A)); *Porter v. Bd. of Trustees of Manhattan Beach Unified Sch. Dist.*, 307 F.3d 1064, 1069 n.7 (9th Cir. 2002) ("Nor do the parties dispute that the IDEA's right of action provides a proper means to enforce a due process hearing order "). *Rutherford*, 2019 WL 1437823.

In *Rutherford*, the Court noted that "[t]he Second Circuit has ruled that an action may be brought under § 1983 to remedy a violation of the IDEA." *A.T.*, 1998 WL 765371, at *7 (citing *Mrs. W. v. Tirozzi*, 832 F.2d 748, 755 (2d Cir. 1987)).[12]

"[P]laintiffs may seek to enforce their IDEA claim under § 1983, under which [this Court] ha[s] subject matter jurisdiction to enforce favorable administrative decisions rendered under the provisions of the IDEA." *Rutherford*, quoting *A.T.* 1998 U.S. Dist. LEXIS 23275, [WL] at *7, 9–10 & n.16; *see also Blazejewski By and Through Blazejewski*, 560 F. Supp. at 705 (issuing preliminary injunction ordering the defendant to implement the decision of an SRO finding that the Court had jurisdiction and could issue injunctive relief under § 1983).

Limiting the actions plaintiffs might take to force implementation of final administrative orders and/or decisions under the IDEA will only reduce the urgency school districts attribute to implementing such Orders and/or Decisions and thereby lessen the credibility of the IDEA's administrative process—to uphold the IDEA's purpose of providing educational services to children with disabilities, parents must be able to choose litigation if they believe that it is necessary to enforce orders given by IHOs/SROs effectively. *SJB ex rel. Berkhout*, 2004 WL 1586500, at *4; *see also M.H. v. Bristol Bd. of Educ.*, 169 F. Supp. 2d 21, 28–29 (D. Conn. 2001) (holding that the IDEA may serve as the basis for a § 1983 cause of action); *Butler v. S. Glens Falls Cent. Sch. Dist.*, 106 F. Supp. 2d 414, 420 (N.D.N.Y. 2000); *R.B. ex rel. L.B. v. Bd. of Educ. of City of New York*, 99 F. Supp. 2d 411, 418 (S.D.N.Y. 2000); *Cappillino v. Hyde Park Cent. Sch. Dist.*, 40 F. Supp. 2d 513, 515–16 (S.D.N.Y. 1999).

---

[12] The *Rutherford* Court also noted that in *Mrs. W.*, 832 F.2d 748, the Second Circuit analyzed the Education of the Handicapped Act ("EHA"), the pre-cursor to the IDEA, and concluded that despite the "extensive remedial scheme" of the statute, Congress intended to "allow resort to other judicial remedies for claims based on the EHA." *Id.* at 755.

In *Rutherford*, the Court followed the sound reasoning of the other district courts in the Second Circuit, holding that § 1983 may provide a cause of action to enforce an IHO's order and/or an SRO's decision.[13] None of the Plaintiffs here have an administrative remedy they can pursue.

As noted above, any attempt to seek another administrative order or decision would be futile as neither an IHO nor an SRO has the power to enforce his or her own orders. No provision in the IDEA, or New York State Education Law, grants an IHO or SRO such power—the relief requested by each Plaintiff. As such, each Plaintiff need not satisfy the IDEA's exhaustion of remedies provision because requesting enforcement of each final administrative order and/or decision issued on behalf of each Plaintiff and such Plaintiff's disabled Student from an administrative officer would be futile.

Each Plaintiff's **only option** to enforce each Plaintiff's final administrative order and/or decision, issued on behalf of each Plaintiff and such Plaintiff's disabled Student, is to seek an order from a court of competent jurisdiction directing DOE to implement and/or comply with each administrative order—an order from this Honorable Court.

## III.    PLAINTIFFS SATISFY THE STANDARDS FOR A PRELIMINARY INJUNCTION

In *R.S. et al. v. New York City Department of Education, et al.* (21-cv-02257) (JPO), Judge Oetken refined the application of criteria for issuing preliminary injunctions in IDEA matters, particularly in situations enforcing final administrative orders under the IDEA. Echoing the prerequisites outlined in *Abrams v. Carranza,*[14] Judge Oetken required that the movant demonstrate (1) a likelihood of success on the merits, (2) that the movants are likely to suffer

---

[13] Here, as in *Rutherford*, each respective Plaintiff asserts at least one claim for violating said Plaintiff's rights, and the rights of said Plaintiff's disabled Student, under the IDEA.

[14] No. 20-CV-5085 (JPO), 2020 U.S. Dist. LEXIS 139881, at *2 (S.D.N.Y. Aug. 4, 2020) (quoting *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010)) (internal quotation marks omitted).

irreparable injury in the absence of an injunction, (3) a balance of hardships tips in the [plaintiffs] favor, and (4) a determination that the public interest would not be disserved by issuing [the] injunction. *R.S., et al. v. New York City Department of Education, et al.*, 21-cv-02257 (JPO), Dkt. No. 22. In *R.S.*, Judge Oetken found these criteria satisfactorily met in *R.S.*, notably emphasizing the DOE's acknowledgment of its financial obligations, which bolstered the plaintiffs' case for likely success on the merits. *Id.*

Furthermore, Judge Oetken highlighted the substantial ongoing financial hardship to the parent and risk to the student's educational continuity as critical factors establishing irreparable harm. *Id.* This, coupled with the DOE's no-hardship stance, if compelled to meet its obligations, clearly tipped the balance of hardships in favor of the plaintiffs. *Id.* The public interest was also deemed to align with enforcing the DOE's statutory obligations, thus underscoring the integrity of educational rights under the law. *Id.*

While the plaintiffs in *R.S.* initially sought a preliminary injunction as relief in their Complaint, Judge Oetken extended that relief by granting a **permanent** injunction, ensuring the DOE would indefinitely meet its uncontested financial duties as authorized under the IDEA and New York Education Law. 20 U.S.C. § 1415; 34 C.F.R. § 518(a); N.Y. Educ. Law. § 4044[4][a]. *Id.* This action by the court displays a scenario where the relief provided is conclusive, even if DOE were to prevail in future proceedings, thus aligning with the Second Circuit's standards for a "mandatory" injunction that effectively grants all relief sought by the movant.[15]

---

[15] The Second Circuit holds movants to a heightened standard where: (i) an injunction is "mandatory," or (ii) the injunction "will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." *M.W. v. New York City Dep't of Educ.*, No. 15CV5029, 2015 WL 5025368 (S.D.N.Y. Aug. 25, 2015), citing *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (quoting *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 33–34 (2d Cir. 1995)). When either condition is met, the movant must show a "clear" or "substantial" likelihood of success on the merits, *Beal v. Stern*, 184 F.3d 117, 123 (2d Cir. 1999), and make a "strong showing" of irreparable harm, *Doe v. New York Univ.*, 666 F.2d 761, 773 (2d Cir. 1981), in addition to showing that the preliminary injunction is in the public interest. *New York ex rel. Schneiderman*, 787 F.3d at 650.

A.    **Each Plaintiff Can Show Irreparable Harm.**

To establish irreparable harm, plaintiffs must demonstrate an injury that is neither remote nor speculative but actual and imminent. *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989); *Consol. Brands, Inc. v. Mondi*, 638 F. Supp. 152, 155 (E.D.N.Y. 1986). Where a school district has refused to implement a final administrative order or decision, such as a hearing officer's decision, courts have found irreparable harm. *Olson v. Robbinsdale Area Sch.*, No. CIV.04-2707 RHK/AJB, 2004 WL 1212081 (D. Minn. May 28, 2004); *e.g., Kantak v. Bd. of Educ., Liverpool Cent. Sch. Dist.*, No. 90-CV-4, 1990 WL 36803, at *2 (N.D.N.Y. March 30, 1990); *Blazejewski By and Through Blazejewski*, 560 F. Supp. at 705. In such circumstances, a Plaintiff's injury is actual and imminent because each Plaintiff is deprived of the FAPE to which he or she is entitled under IDEA. *Olson*, 2004 WL 1212081; *A.T.*, 1998 WL 765371; *see also Kantak*, 1990 WL 36803, at *2 (holding that the continued deprivation of the service. .. determined to be necessary to serve the individual education requirements of the Student produces a sufficient injury).

Each Plaintiff here has satisfied the preceding standard. During the administrative proceedings, the IHO or SRO determined that the DOE failed to provide a FAPE and has continued to fail in funding the necessary services to remedy this failure. Each Student's injury is actual and imminent because each Student is being deprived of the FAPE to which he or she is entitled and has been deprived of in the past, as outlined in each Plaintiff's final administrative order and/or decision.

Like the student in *R.S.*, each Student-Plaintiff's placement at iBRAIN is at increasing risk the longer DOE avoids its uncontested obligations, which would be an irreparable injury to each Plaintiff. *R.S. et al. v. New York City Department of Education, et al.*, 21-cv-02257 page 5 of 6.

### i.    *Irreparable Harm to Z.A.*

For the 2022–2023 school year, Z.A. has experienced significant and ongoing irreparable harm because the DOE failed to implement the FOFD issued on February 19, 2024 (IHO Case No. 243409). As of today, April 26, 2024, the DOE has had **67 days** to comply with this order, which mandates direct funding of Z.A.'s full tuition and special transportation at iBRAIN. Each day of delay denies Z.A. access to an educational placement equipped to meet his specific needs, as determined necessary by the administrative order, and potentially jeopardizes his continued access to these essential services due to non-payment. This non-compliance infringes on Z.A.'s rights under the IDEA to receive a tailored educational program, resulting in potential setbacks that irreversibly threaten his educational trajectory. Because of the DOE's non-compliance, there is an outstanding balance of **$235,316.80** for Z.A.'s tuition for the 2022–2023 school year.

In the 2023–2024 school year, Z.A.'s educational placement remains without funding because of the DOE's continued failure to implement the relative FOFD and SRO Decision No. 23–314, issued on February 14, 2024 (IHO Case No. 250852). It has been **73 days** since the SRO decision was filed. The DOE's ongoing inaction threatens Z.A.'s ability to remain in a setting that meets his complex educational needs, as established in the SRO's decision. The deprivation of these critical services results in severe daily educational setbacks that cannot be rectified. This continued denial of Z.A.'s right to a FAPE as guaranteed under the IDEA represents clear, ongoing, and irreparable harm, urgently warranting judicial intervention to enforce DOE compliance with the administrative order. Again, because of DOE's non-compliance, there is an outstanding balance of **$190,000.00** for tuition.

As for enforcing the relevant orders for Z.A. during the 2023–2024 school year, there is a noticeable discrepancy in the speed and efficiency between different DOE units. The Office of Non-Public School Payables ("NPSP"), which handles the implementation of SRO Decisions, processes payments quickly, contrasting sharply with the Implementation Unit ("IU"), which is responsible for "pendency payments" and funding for the parent's favorable FOFD's. The IU has consistently delayed payments. For the 2023–2024 school year, although the IHO initially ordered that the DOE fund the Plaintiffs' special transportation services at the "market rate" [ECF No. 1–4], this decision was appealed to the Office of State Review. The SRO reversed the order relative to transportation, mandating that the DOE "fully fund the student's special transportation for the 2023–2024 school year as set forth in the relevant contract in the hearing record." [ECF No. 1–5].

Further clarification from SRO Krolak emphasized that the intent was for the DOE to cover the full costs of the requested relief without reductions based on equitable considerations. In a letter to the Plaintiffs clarifying the matter SRO Krolak specifically stated:

> [Y]ou are correct in identifying that the that the ordering clauses were limited to relief for transportation but that the body of the decision clearly indicated that the parent's appeal was sustained and the IHO's determinations limiting relief based on equitable considerations were overturned both as to funding for transportation and as to funding for tuition. The intent in issuing the decision was for the district to fund the full costs of the requested relief without any reductions on equitable grounds. Additionally, considering the findings in the body of the decision and the specific determination that the parent's appeal was sustained, rather than sustained in part, the decision, as written, even considering the lack of specificity in the ordering clauses, should provide sufficient basis to compel the district to complete its obligations and fund the requested relief.

*See* Declaration of Ataur Raquib, Esq. Exhibit 1.

Despite Plaintiffs providing the necessary documentation to implement funding on March 14, 2024, only Z.A.'s transportation services were promptly paid because of NPSP's involvement, not the IU, which has yet to fund the tuition as ordered. [ECF No. 1–4]. This discrepancy

underscores the urgent need for a more reliable and prompt enforcement mechanism within the DOE to ensure compliance and shows continued and irreparable harm to Plaintiff Z.A. and others like him.

### ii.     Irreparable Harm to D.D.L.C.

For the 2023–2024 school year, D.D.L.C. has encountered substantial and ongoing irreparable harm because of the DOE's failure to implement the FOFD issued on March 3, 2024 (IHO Case No. 250961). As of today, there have been **55 days** since the issuance of this order, which directed the DOE to cover the total costs of tuition, specialized transportation, nursing services, and additional related services at iBRAIN. This ongoing failure to comply with the order deprives D.D.L.C. of necessary educational and health services and jeopardizes continued access to these services, risking interruptions in his education and care because of potential non-payment.

Each day of delay exacerbates the infringement on D.D.L.C.'s rights under the IDEA to an education tailored to his unique needs, setting back his educational progress in ways that cannot be recovered. This continuous denial and the potential for future educational disruption constitute clear, ongoing, and irreparable harm that underscores the urgent need for judicial intervention to ensure the DOE adheres to its legal obligations. Because of the DOE's failure to implement, there is an outstanding balance of $**288,232.00** for tuition for Student-Plaintiff D.D.L.C. and $**245,250.00** outstanding for transportation services.

### iii.     Irreparable harm to S.J.D.

For the 2023–2024 school year, S.J.D. suffered significant and irreparable harm because of the DOE's failure to implement the FOFD issued on November 17, 2023 (IHO Case No. 251257). As of today, April 26, 2024, the DOE has had **159 days** to comply with this order, which mandates comprehensive funding for S.J.D.'s tuition, specialized transportation, and 1:1 nursing services at

a private school tailored to her specific educational and health needs. The DOE's inaction not only deprives S.J.D. of these critical services but also risks her continued access to this specialized educational setting, leading to interruptions in her educational and healthcare services because of non-payment.

The ongoing delay in implementing the order significantly infringes on S.J.D.'s rights to receive an appropriate education designed for her unique circumstances under IDEA. This denial of essential services causes educational setbacks and health risks that are compounded daily and cannot be remedied retroactively. This continued deprivation of her legal rights under IDEA represents clear, ongoing, and irreparable harm, emphasizing the urgent need for judicial intervention to compel DOE compliance with the mandated provisions. For the 2023–2024 school year, there remains an outstanding balance of $**111,180.00** for transportation services, further displaying the effect of the DOE's non-compliance.

Each Plaintiff here has satisfied the above standard. Accordingly, each Student's injury is actual and imminent because each Student is being deprived of the FAPE [16] to which he or she is entitled and has been deprived of in the past, as outlined in each Plaintiff's final administrative order and/or decision.

**B.    Each Plaintiff Can Demonstrate a Likelihood of Success on the Merits.**

Here, DOE does not contest each Plaintiff's right to any of the requested payments, so Plaintiffs are likely to succeed on the merits. *R.S. et al. v. New York City Department of Education, et al.,* 21-cv-02257, ECF No. 22, page 5 of 6.

---

[16] In each respective Plaintiff's underlying IDEA proceeding, an IHO and/or SRO in final administrative orders and/or decisions held that DOE denied each Plaintiff's disabled Student a FAPE, and therefore Ordered DOE to fully fund each Student's appropriate unilateral placement at iBRAIN. Without the required funding, DOE continues to deny each Student an education that is free – funded by DOE.

Each Plaintiff has already prevailed on the merits of their respective underlying DPC—that is, each Plaintiff has prevailed in the administrative proceeding brought on behalf of such Plaintiff's disabled Student. Each Plaintiff's case comes to this Court after lengthy and arduous administrative hearings and proceedings in which each Plaintiff ultimately prevailed. Each IHO and/or SRO in each proceeding found that each Plaintiff's Student had been denied a FAPE, that iBRAIN was an appropriate unilateral placement, and that equitable considerations favored total funding for each Plaintiff's placement at iBRAIN for the school year in question.

Each Plaintiff can show a likelihood of success as well. The right to have a hearing officer's decision carried out is a right "secured by the laws of the United States." *Olson v. Robbinsdale Area Sch.*, No. CIV.04-2707 RHK/AJB, 2004 WL 1212081 (D. Minn. May 28, 2004); *cf. Maine v. Thiboutot*, 448 U.S. 1, 4 (1980). Where a party does not "dispute the merits of the order itself, [but] rather... seek[s] to enforce it," that claim is "appropriately addressed in a § 1983 action." *Reid v. Bd. of Educ., Lincolnshire-Prairie View Sch. Dist. 103*, 765 F. Supp. 965 (N.D. Ill. 1991).

Here, each Plaintiff's Student has been and continues to be, denied their right to a FAPE under IDEA. *Rutherford*, 2019 WL 1437823; *A.T.*, 1998 WL 765371. By failing and/or refusing to implement each Plaintiff's final administrative order and/or decision, DOE has failed and/or refused to comply with the IDEA's mandate to provide a FAPE to each Student-Plaintiff. As a result, each Plaintiff and each Plaintiff's student with disabilities are not receiving the meaningful benefits to which they are entitled. *Id.*

Each Plaintiff here has prevailed in the cause of action in the administrative hearings. 20 U.S.C. § 1415(i)(l)(A). It is, therefore, not an option for DOE to refuse to comply with each unappealed IHO FOFD and/or SRO decision issued in favor of each Plaintiff and each Plaintiff's

disabled Student here.[17] Each Plaintiff can show a likelihood of success on the merits, as each Plaintiff's right to receive funding for their child's attendance at iBRAIN, relative to the school year outlined in each Plaintiff's DPC, and has been determined as outlined in each final administrative order and/or decision as detailed in Plaintiffs' Complaint. Simply put, not only can each Plaintiff show a "likelihood" of success on the merits, but each Plaintiff's success on the merits is indisputable. It is indisputable that DOE must fund each Plaintiff's placement at iBRAIN for their respective school year. What is also indisputable is DOE's policy and practice of delaying the implementation of administrative orders, which has necessitated this action.[18]

Each Plaintiff here satisfies the "likelihood of success on the merits requirement" because each Plaintiff has already prevailed in their respective underlying IDEA proceeding. Because each Plaintiff prevailed in their IDEA proceeding, receiving a final administrative order and/or decision in their favor, "DOE's only lawful course of action is to implement [these] orders, full stop." 03-CV-9917, Dkt. No. 234; *see also Y.S. on behalf of Y.F.*, 2021 WL 1164571, at *3.

Additionally, the DOE will suffer no hardship by meeting its uncontested past and ongoing obligations—the balance of hardships weighs in favor of each Plaintiff. *R.S. et al. v. New York City Department of Education, et al.,* 21-cv-02257, ECF No. 22, page 5 of 6.

## C.   Each Plaintiff Can Show that the preliminary injunction is in the Public Interest.

When a preliminary injunction is sought to "affect government action taken in the public interest pursuant to a statute or regulatory scheme," the Court inquires whether the injunction is in

---

[17] Accord*, Olson v. Robbinsdale Area Sch., Id.*

[18] "[P]laintiffs may seek to enforce their IDEA claim under § 1983, under which [this Court] ha[s] subject matter jurisdiction to enforce favorable administrative decisions rendered under the provisions of the IDEA." *A.T.*, 1998 WL 765371; *see also Blazejewski By and Through Blazejewski*, 560 F. Supp. at 705 (issuing preliminary injunction ordering the defendant to implement the decision of an SRO finding that the court had jurisdiction and could issue injunctive relief under N.Y. Educ. Law § 1983 (McKinney 1999)). *Rutherford*, 2019 WL 1437823.

the public interest rather than balancing the equities. *See Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 631 (2d Cir. 2020). *Y.S. on behalf of Y.F.*, 2021 WL 1164571, at *3.

When Congress has created a special enforcement system, as with IDEA, the public interest is on the side of maintaining that system's integrity. *Olson*, 2004 WL 1212081; *Cf In re Sac & Fox Tribe of Mississippi in Iowa/Meskwaki Casino Litig.*, 340 F.3d 749, 760 (8th Cir. 2003). "The public interest lies in the proper enforcement of... the IDEA and in securing the due-process rights of special education students and their parents provided by statute." *In re Sac & Fox Tribe of Mississippi in Iowa/Meskwaki Casino Litigation*, 340 F.3d 749, citing *Petties v. D.C.*, 238 F. Supp. 2d 114, 125 (D.D.C. 2002).

Finally, an injunction is appropriate here because the equities strongly favor the Plaintiffs, and an injunction is in the public interest. *Y.S. on behalf of Y.F.*, 2021 WL 1164571, at *5. The public interest is always "best served" by ensuring constitutional and civil rights are upheld after a plaintiff has shown a likelihood of success on the merits. *Id.*; *Coronel v. Decker*, 449 F. Supp. 3d 274, 287 (S.D.N.Y. 2020)("[A]s this Court has previously stated, the 'public interest is best served by ensuring the constitutional rights of persons within the United States are upheld' " (quoting *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *13 (S.D.N.Y. May 23, 2018))). "This interest is particularly strong where the rights to be vindicated are constitutional in nature." *V.W. by & through Williams v. Conway*, 236 F. Supp. 3d 554, 589 (N.D.N.Y. 2017) (citing *Ligon v. City of New York*, 925 F. Supp. 2d 478, 541 (S.D.N.Y. 2013)).

The protections of IDEA stem from the Constitution's Equal Protection Clause. *Y.S. on behalf of Y.F.*, 2021 WL 1164571, at *5; *See Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 198 (1982) (IDEA was passed "to provide assistance

to the States in carrying out their responsibilities under... the Constitution of the United States to provide equal protection of the laws." (citing S. REP. 94–168, 5 (1975)).

The public interest in this matter lies in the enforcement of final administrative orders and/or decisions issued in favor of each Plaintiff and each Plaintiff's disabled Student in their underlying IDEA proceedings, and in securing the due-process rights of students who receive special education services and their parents provided by statute. Enforcement of such orders does not harm DOE in any way. Should this Court issue the preliminary injunction, DOE will be obligated to do what it is already legally obligated to do, to wit: comply with the substantive and procedural mandates of the IDEA by implementing, and/or complying with the final administrative orders and/or decisions issued in favor of the Plaintiffs. The equities favor the Plaintiffs here.

Allowing DOE to remain delinquent in its legal obligations, particularly considering the long delays it has built into the administration of the underlying due process hearing, sends the wrong message to the Plaintiffs—and the Defendants. The message the Plaintiffs would receive is that DOE can wait out the delays it creates, forcing parents, who rarely have sufficient resources to maintain their children with disabilities in unilateral educational placements, to give up trying to procure funding for appropriate educational services. DOE's actions are incredibly egregious considering that in each Plaintiff's IDEA proceeding, an IHO or SRO found that DOE failed to provide each Plaintiff's disabled Student with a FAPE. Despite this, DOE continues its violation of each Plaintiff's right to a FAPE by refusing to implement the final administrative order and/or decision issued in favor of each Plaintiff and their disabled Student in their respective IDEA proceedings, and by doing so, continues to deny each Plaintiff and their disabled Student their rights under the IDEA.

As Judge Oetken held in *R.S.*, Fourth, the public interest is not disserved by enjoining the DOE to meet its uncontested obligations. *R.S. et al. v. New York City Department of Education, et al.,* 21-cv-02257, ECF No. 22, page 5 of 6.

<u>**CONCLUSION**</u>

For the above reasons, each Plaintiff respectfully requests that the Court grant the relief sought in its entirety, as well as such other, further, and different relief as to the Court may seem just, proper, and equitable.

Dated:   April 26, 2024
       New York, New York

Respectfully submitted,
Brain Injury Rights Group, Ltd.
*Attorneys for the Plaintiff*

By:   */S/*
Ataur Raquib, Esq. (5860523)
300 East 95th Street, #130
New York, New York 10128
ataur@pabilaw.org